**Rodolfo T. ANDUJO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61192.**

Court of Criminal Appeals of Texas, En Banc.

July 13, 1988.

Luis E. Islas, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Leo B. Garza, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

Appellant was found guilty of murder (V.T.C.A., Penal Code, § 19.02), by a jury who assessed punishment at 25 years' imprisonment.

On appeal appellant raises four points (nee grounds) of error. Appellant contends the trial court (1) erred in overruling his motion to suppress the in-court identification of him by Sonia Morales Romero in violation of due process of law, (2) erred in overruling the objection to the prosecutor's jury argument which bolstered a witness' testimony by injecting unsworn testimony, (3) erred in refusing a mistrial motion based on jury argument attacking a de-

fense witness, and (4) erred in refusing to submit a special requested jury instruction on tainted police identification procedures.

Appellant does not challenge the sufficiency of the evidence to sustain his conviction as a party. In order to place his points of error in proper perspective we shall briefly review the evidence.

The record reflects that Sonia Morales Romero, her sister, Lucy Morales Romero, and Juan Najera observed a fight while standing in the vicinity of Alley G and East Fifth in El Paso about 8:50 p.m. on July 13, 1977. Sonia, who testified with the aid of an interpreter, related that the fight initially involved only two men, but that a third man joined in, making it "two against one." She described the two assailants as a "thinner" man and the other as the "fatter" or "heavier one." She told how the "thinner" man threw the victim to the ground and took his wallet after the victim had been kicked and beaten. Sonia testified the two assailants began to walk away, but the victim got up and pursued them. The fight resumed between the thin man and the victim and the "fatter" man subsequently intervened by swinging a chain. She then saw the thin man throw the victim to the ground again and then stab him in the chest. Sonia then ran to the nearby parking lot of the Sacred Heart Church gym and alerted a security guard to the incident, as the two assailants walked away. She related the security guard stated that he knew them. Sonia made an in-court identification of appellant as the "heavier one" of the assailants whom she knew as "El Motor." Other evidence indicated the thinner man was the appellant's brother, Juan, and the victim was Jose Luis Hernandez, the deceased.

Sonia's sister, Lucy, also witnessed the fight. She observed the "heavier" assailant swinging a chain and the "thin man" beating the victim. After the wallet was taken Lucy saw the victim pursue his attackers, and she observed the victim being stabbed by the "thinner one." Lucy estimated she watched the fight for five or eight minutes, but she could not identify any of the men involved.

Juan Najera, 15 years old, also observed the fight as had the two sisters. He could not identify the men as he was not wearing his glasses and it was beginning to get dark.

Maria Elena Ponce, who lived near the scene of the fight, testified that about 8:20 p.m. or so she saw "Juanillo" and Luis (the victim) walk by her house accompanied by the appellant, whom she knew. Ponce was alerted to the fight by her daughter, whom she had sent to the store about 8:40 p.m. Although she did not observe what happened when she reached the scene she saw Jose Luis Hernandez lying on the ground. She did see two men crossing the street and walking fast. Later at the police station she identified "Motor" and "Juan."

The Medical Examiner, Dr. Frederick Bornstein, who performed the autopsy, stated the cause of death was a stab wound to the chest which penetrated the pericardial sack, puncturing the aorta. Dr. Bornstein surmised that a knife-like object was used to cause the death, that the fatal wound had been inflicted by "a sharp blade, with a width of about half an inch, and a minimal length of one and half to two inches."

El Paso Officer Eric Bennett investigated the homicide scene between 10:30 and 11:00 p.m. on July 13th and then went to the R.E. Thomason Hospital where he discovered that Hernandez had died. Among Hernandez's belongings he found a wallet and bloody clothing. He observed the autopsy and later after receiving other information he arrested appellant and another man at appellant's apartment. Bennett admitted that no weapon had ever been located that might have been used in the alleged offense.

Maria Cruz Ramirez, the deceased's mother, testified that her son carried $200.00 cash on July 13th, which was an income tax refund. She related that her son carried two wallets with him on that day, one for "his money and in the other one, he would carry payroll stubs and his pictures."

After the motion for instructed verdict was overruled appellant called Lorenzo

Romo, the security guard at the gym on July 13th. He related a young woman ran up to him and explained that a fight was taking place. As he crossed Mesa Street to investigate he saw two men running away down the sidewalk. He was unable to identify either one of the men, and denied telling the young woman that he knew them. Romo then went to the victim and found him lying on the ground bleeding.

Charles Hamrick, an El Paso police officer, was called by the defense. He related that after receiving a call from the dispatcher he had detained appellant in an alley near the Sacred Heart Church and gym near Mesa Street. In a "pat down" he found appellant to be unarmed and without money. He saw no blood on appellant's clothing and appellant did not appear to be excited or out of breath. Upon receiving instructions Hamrick took appellant to the Hotel Dieu Hospital for a "one on one confrontation" with two witnesses who were unable to identify him. The appellant was then released.

▮ Initially appellant contends the "trial court erred in denying the appellant's timely motion to suppress the in-court identification of the appellant on the grounds that the procedures utilized by the police were so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law."

Appellant's first trial ended with a hung jury and a mistrial. Prior to that trial he filed the motion to suppress now relied upon. The motion was overruled.[1] We find a transcription of the court reporter's notes from the hearing on said motion in this appellate record. The hearing appears to be somewhat disjointed, but we observe that Sonia Morales Romero identified the appellant as the "heavier" man she had seen attacking the victim on the date and time in question, that on the summer eve-

ning of July 13th about 8:50 p.m. it was "light" "... the night was neither too dim nor was it too bright; it was just medium average." She testified that the appellant lived close to her house[2] and she had seen him "about five times going by my house."

Sonia admitted that later in the evening of July 13th she had gone to the police station and had been shown a photographic spread of ten photographs and though appellant's photograph was included she did not identify him. She explained that appellant lived next door and she did not want any problems, that she thought the police were asking if she could identify the man who "did the killing," and she had not seen appellant stab the victim. Sonia admitted the next day she had seen two photographs lying on a desk at the police station and on that occasion she had identified appellant's photograph, it apparently being the same one in the photographic spread shown her the evening before. She denied that anyone showed her the two photographs, that they were lying on the desk and there "were more photographs there." She denied she made the identification only after she heard another woman (Ponce) identify the photographs as that of "El Motor" and his brother, Juan. Sonia stated she could have identified appellant from photographs "or personally."

Appellant attempted to impeach her testimony with a deposition she had given on December 29, 1977. Sonia admitted there were inconsistencies because she was scared. Sonia was the only witness offered at the suppression hearing and she testified through an interpreter. The record was not as well developed as it might have been. At the conclusion of the hearing the trial judge overruled the motion to suppress, but we do not find that any findings of fact or conclusions of law as recommended by *Martinez v. State*, 437 S.W.2d

---

1. While no new motion to suppress was filed nor was the court formally asked to reconsider the same motion in the instant trial, appellant contends that he reurged the same objections when he objected to the in-court identification by Sonia Morales Romero "for reasons previously stated," and when he moved to have the jury instructed to disregard Sonia's testimony, first at the close of the State's case-in-chief and again when he had presented his testimony.

2. Later at the instant trial Sonia testified appellant lived two doors away from her house on South Campbell Street.

842, 849 (Tex.Cr.App.1969). The evidence, however, showed that there was clear and convincing proof that the in-court identification was of independent origin, and the photographic spread was not shown by the evidence to be tainted.

Based upon the totality of the circumstances it cannot be said the confrontation or confrontations reflected by the suppression hearing resulted in such unfairness that it infringed appellant's right to due process of law or "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." See *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Graham v. State*, 422 S.W.2d 922 (Tex.Cr.App.1968); *Martinez*, supra, at pp. 846–847.

At the second trial Sonia Morales Romero again testified. The State elicited her in-court identification of appellant based on her observations at the scene under adequate lighting conditions and her personal knowledge of him. Apparently in anticipation of cross-examination the prosecutor then elicited from Sonia that on July 13th, shortly after the fight, she had seen the appellant in a one to one confrontation at the Hotel Dieu Hospital and that she had not identified appellant. She explained she was directly asked only if she saw the man "who did the killing" and answered "no," and stated further she was afraid.

On cross-examination appellant elicited from Sonia most of all the matters he complains about on appeal. He established for the jury that Sonia had failed to identify appellant at the hospital and from the first photographic spread shown her, that she identified him after seeing two photographs of appellant and his brother and after Mrs. Ponce had stated she recognized them, etc. The appellant attempted to impeach Sonia about inconsistencies between her trial testimony and a statement given to defense investigators on August 24th and a deposition given on December 29, 1977. Sonia sought to explain the inconsistencies by saying she was nervous and the defense lawyers had confused her at the deposition hearing, and that if she

"lied" it was because she was afraid of the appellant. The thrust of appellant's defense was mistaken identification on Sonia's part.

After both sides closed the court dictated the following findings into the record.

"One, Sonia Morales recognized the defendant immediately at the scene. Two, Sonia Morales did not identify the defendant at either Hotel Dieu or in person or from the photographic lineup because (a) she was afraid of the defendant because she knew him and he lived near her; (b) she did not want to get involved in the case; (c) the police asked her if the defendant was the one that did the stabbing and this question, and the wording of this question, gave a truthful means of avoiding the problem of becoming involved in the case against the defendant, because the defendant was not the one who did the stabbing. Three, Sonia Morales was not informed of who the defendant was by the statement of Maria Elena Ponce. She already knew that the defendant was a person involved in the killing because she recognized him that night. Four, Sonia Morales was given courage to tell what she knew by learning that the witness, Maria Elena Ponce, had spoken up.

"Five, Sonia Morales told the police that El Motor, the defendant, was involved in the killing before she saw the pictures of the two defendants shown to her by the police.

"Six, the police showed her the two pictures of the two defendants, not for the purpose of a lineup identification, but rather for the purpose of verifying that Sonia Morales was talking about the same persons the police thought she was talking about.

"Seven, because of the findings of facts found, the Court concluded that there is no tainted identification question to submit to the jury, but rather a question of whether Sonia Morales is telling the truth, which is for the jury to decide under the general instructions, and instructions in impeachment testimony of the Court's charge.

"The Court submits that into the record."

The record supports the trial court's findings, and the totality of the circumstances reveals no substantial likelihood of misidentification even if it can be argued that the pre-trial procedure was suggestive. Appellant's point of error is overruled.

■ In his fourth point of error appellant contends the "trial court erred in refusing to submit to the jury the appellant's requested instruction and tainted police identification procedures" at the guilt stage of the trial.

The requested instruction would have charged the jury the defendant was entitled to pre-trial identification procedures that were fair and unsuggestive be it a lineup, singularly or in a group, photographic spread, etc., and that an in-court identification is inadmissible if it results from an unfair or suggestive pre-trial identification procedure. The requested instruction would have charged the jurors that if they found from the evidence, or had a reasonable doubt that Sonia Morales Romero's in-court identification resulted from any unfair or suggestive identification procedure they were to disregard the in-court identification. No standard for judging fairness or suggestiveness was included. The special requested charge was denied.

Appellant concedes that *Allen v. State,* 511 S.W.2d 53 (Tex.Cr.App.1974), is contrary to his position, but urges reexamination in light of Article 38.23, V.A.C.C.P. Given the circumstances of this case, we adhere to *Allen.* See also *Johnigan v. State,* 628 S.W.2d 852, 854–855 (Tex.App.– Ft. Worth 1982).

■ In his third point of error appellant urges that the trial court erred in overruling his motion for a mistrial "because of the prejudicial jury argument of the prosecution injecting unsworn testimony attacking a defense witness (Romo)."

Appellant complains of the State's argument that if Lorenzo Romo had admitted he told Sonia Morales Romero that he knew the two men running from the scene he would lose his job as a security guard.

Appellant's counsel in his earlier argument had attacked the credibility of Sonia Morales Romero on a broad front. Among other things, he called attention to Romo's testimony that a young woman came running up to him while he was on duty as a security guard at the Sacred Heart Church gym and told of a fight, and that he saw two men running away. Appellant's counsel then reminded the jurors that Romo had expressly denied that he told Sonia Morales Romero that he knew the two men as she had testified. Appellant then moved on to other examples of inconsistencies in Sonia Morales Romero's testimony.

In the prosecutor's argument at the guilt stage of the trial the record reflects:

"... But, no, Sonia comes in here and tells you, 'That's the man. I was scared of him. I did not identify him.' Lucy comes in here and tells you, 'I can't identify anybody.' And the difference between the two sisters is not but two years in age, but an awful lot of years in guts, Ladies and Gentlemen, awful lot of years, because Lucy is not about to get involved, just like Mrs. Ponce is not about to get involved, and just like Officer Romo.

"Officer Romo was not about to get involved, and he becomes, I think, a very important witness and he was one that Mr. Baker called. Lorenzo Romo, who tells you, 'I am watching a man spray paint, and then, a girl comes up and calls me and I go down and there is a body.' Lorenzo Romo tells you that, 'I'm scared to death,' number one. If I were out there that night, I would be scared to death. He is a security guard and he has got some training in the laws of arrest and detention, but this is the first time he has ever seen a dead body. This is the first time he had ever seen a man bleed to death. And he tells you, 'I saw two men running this way, down toward Sixth Street,' and I asked him, 'Well, why didn't you stop them?' And, well, 'I don't know. I was too excited; I was too scared,' is what he said.

"Why would he not admit to you that Sonia told him, 'There they go, the ones that were involved in this thing,' and he said, 'I know them.' Why wouldn't he admit that? Let's analyze it. Any time a witness doesn't tell the total truth, he has got something to gain, all right, or otherwise he would tell the total truth. He is employed as a security guard. Now, if he comes into court and he admits that on the night of this incident, he told the witness he knew those two men, he would lose his job as a security guard.

"MR. BAKER: Excuse me, Mr. Weiser.

"MR. WEISER: (Continuing) More than likely, he would be discredited to the point where he wouldn't continue to be hired.

"MR. BAKER: Excuse me, Mr. Weiser. Your Honor, I am going to object to Mr. Weiser giving any statement at all to this jury as to what would happen to Mr. Romo concerning his present employment or any future employment as being totally outside of the record, and request an instruction to the jury to totally disregard that for any purpose.

"THE COURT: Well, Ladies and Gentlemen of the Jury, you will disregard the last argument made by Counsel for the State.

"MR. BAKER: And additionally, Your Honor, based on that last argument, we again would request a mistrial in this case.

"THE COURT: Overruled.

"MR. BAKER: Thank you."

It is well settled that the prosecutor may answer jury argument by opposing counsel so long as the response does not exceed the scope of the invitation. *Johnson v. State,* 611 S.W.2d 649, 650 (Tex.Cr.App.1981); *Valenciano v. State,* 705 S.W.2d 339, 342–43 (Tex.App.-San Antonio 1986, PDR ref'd); see also *Nethery v. State,* 692 S.W.2d 686, 703 (Tex.Cr.App.1985), cert. den. 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986).

Further, an attorney may make reasonable deductions from the evidence. It has been said "that counsel may in argument draw from the facts in evidence all infer-ences that are reasonable, fair, and legitimate and he will be afforded latitude without limitation in this respect so long as his argument is supported by the evidence and offered in good faith." *Griffin v. State,* 554 S.W.2d 688, 696 (Tex.Cr.App.1977). See also *Denison v. State,* 651 S.W.2d 754, 761–762 (Tex.Cr.App.1983); *Carter v. State,* 614 S.W.2d 821, 823 (Tex.Cr.App. 1981); *Vaughn v. State,* 607 S.W.2d 914, 922–923 (Tex.Cr.App.1980); *Plunkett v. State,* 580 S.W.2d 815, 825 (Tex.Cr.App. 1979) (opinion on rehearing).

Still further, any injury from improper argument is ordinarily obviated when the court instructs the jury to disregard the argument, unless the remarks are so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonition. See *Blansett v. State,* 556 S.W. 2d 322, 328 (Tex.Cr.App.1977). See also *Brown v. State,* 692 S.W.2d 497, 502 (Tex. Cr.App.1985); *Johnson v. State,* 698 S.W. 2d 154, 167 (Tex.Cr.App.1985); *McKay v. State,* 707 S.W.2d 23, 37 (Tex.Cr.App.1985).

The prosecutor had the right to respond to the argument of appellant's counsel and to draw reasonable deductions from the evidence, but if there was any error the court's instruction was sufficient to cure it. *Thomas v. State,* 519 S.W.2d 430 (Tex.Cr. App.1975), cited by the appellant, is distinguishable on its facts. The point of error is overruled. The trial court did not err in overruling the motion for a mistrial.

■ In his second point of error appellant contends the "trial court erred in failing to grant the appellant's objection to the State's argument which bolstered the State's witness by injecting unsworn testimony."

The argument complained of involved State's witness Maria Ponce and the remarks were made in the closing argument of the prosecutor at the guilt stage of the trial. Appellant objected to the "you don't snitch ... and live" statements of the prosecutor which he contends were "Barrio facts" outside the record.

The crucial issue in the arguments by both parties was the credibility of Sonia

Morales Romero. In arguing that Romero was credible the prosecutor stated:

"You know, on the surface, logically, you can argue that, and Mr. Baker is very logical and made a very logical argument, but when you really look at what she's confronted with and what she was trying to tell you, I think you will reach a different result. You see, she can't express herself to the point where she can let her feelings come out of her chest and speak to you. And I can't do that for her, because all I can do is ask questions. But when she told you that, 'Look', and this is the basis of what she told you, 'I knew the guy. I knew them both. The Motor lives two houses away. I knew it was him that night, and I didn't identify him out there at that hospital parking lot for two reasons. One was because they asked me if it was he that did the stabbing. More importantly, I was afraid of him. He lives right there in the neighborhood.' They're not going to get involved. Then, she goes to the police station three hours later. 'I was afraid of him.' That's why she didn't identify him. She knew who it was. She told you she did. And she gets up the guts when finally somebody else comes forward. And how easy was it to get Maria Ponce to come forward?

"Maria Ponce tells you she sees the three of them walking down here, and Maria Ponce tells you that she goes across the street back to her house. And then, her little girl goes down to the store, and the little girl tells her something is going on and she runs down there and goes back home. She said, 'I went back home'. That was after she saw the body lying there on the pavement. And I think it was Mr. Baker that asked her, 'Well, did you tell the police anything at that point?' 'No.' 'Why?' 'I didn't want to get involved.' Remember that? 'I didn't want to get involved.' Sure, she didn't want to get involved. You don't snitch, Ladies and Gentlemen, and live. You don't snitch. That's why she didn't want to get involved.

"MR. BAKER: Excuse me, Mr. Weiser. Your Honor, I'm going to object again. Mr. Weiser is making constant reference to the locale, and again, now making a statement that you don't snitch and live. That's totally outside of the evidence. That is extremely prejudicial and we would request a mistrial based on that at this time.

"MR. WEISER: It's a reasonable inference drawn from the evidence, Your Honor, based on what these witnesses have said.

"THE COURT: Your objection is overruled.

"MR. WEISER: Thank you, Your Honor.

"MR. BAKER: Excuse me, Your Honor. Excuse me. May I have a ruling on my motion?

"THE COURT: Your objection is overruled.

"MR. BAKER: On my motion for a mistrial, Your Honor.

"THE COURT: Motion for mistrial is denied.

"MR. BAKER: Thank you, Your Honor.

"MR. WEISER: And she didn't say anything to the police. Until the police come to her sister's house, and I don't remember whether it's 709 or 711, but it's somewhere in the same general area. Until the police go to her sister's house and take her sister downtown, then she goes, because they get her...."

■ As can be seen, the objection was that the "you don't snitch and live" remarks were outside the record. The bolstering objection or complaint now urged on appeal was not made to the trial court. Nothing is presented for review on that score.

The State relies upon *Salinas v. State*, 542 S.W.2d 864 (Tex.Cr.App.1976), where it held that a comment by the prosecutor in argument, "... I think it is a safe inference that being an informer is a very hazardous profession" was based on common knowledge and did not appear to have been prejudicial to the defendant. The State also urges that it is proper for an attorney to make a reasonable deduction from the

evidence. See *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Cr.App.1973); *Griffin v. State,* supra, at 690. Although a prosecutor may draw from the facts in evidence all reasonable inferences, he may not use jury argument to get before the jury, either directly or indirectly, evidence which is outside the record. *Jordan v. State,* 646 S.W.2d 946, 948 (Tex.Cr.App.1983).

The prosecutor's argument that Sylvia Morales Romero was reluctant to identify appellant because she lived near him and was afraid was supported by the evidence. He observed that Ponce, whom the record showed lived in the neighborhood and knew appellant, had also shown her reluctance at first to get involved. This observation was supported by the evidence. The complained of statement which followed was not divorced from common knowledge or an unreasonable deduction from the evidence.

No error is presented. The point of error is overruled.

The judgment is affirmed.

CLINTON, MILLER and DUNCAN, JJ., concur in the result.

CAMPBELL, J., not participating.