Morales-PD v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-205-CR

     PAUL DAVID MORALES,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 91-606-C
                                                                                                    

O P I N I O N
                                                                                                    

      This is an appeal by defendant Morales from his conviction for murder (habitual), for which
he was assessed life in the Institutional Division of the Texas Department of Criminal Justice.
      On January 31, 1990, Emelio Lopez was at home in Waco when he was shot with a firearm
and killed. Eric Enriquez was sitting on his front porch a half block from the Lopez house. Eric
saw defendant Morales drive his car up to and enter the back yard of the deceased. A few minutes
later Eric heard gun shots. After Eric heard the shots, defendant came out and left in his car with
a large TV which was not there when Eric saw defendant go into the Lopez house. Debbie Torres
Morales testified that defendant called her to say he had to leave town because he had messed up. 
Tom Enriquez, Eric's father, was told by defendant, "[I]f you or your son Eric tell the police that
I was anywhere around this home when this murder happened, you will be taken care of," and
"that your son, Eric, was the one who had seen him at the time the murder was committed." Tom
Enriquez further testified that defendant also told him that he, the defendant, was the one who had
killed the deceased.
      Defendant was found guilty. During the punishment phase, four prior felony convictions were
proved up on defendant and, as noted, he was assessed life in prison. 
      Defendant appeals on six points of error.
      Point one asserts the questions posed by the State inquiring into the witness' fear of the family
of [defendant] is in violation of the ruling on a motion in limine, was manifestly improper, and
denied [defendant] due process and a fair trial under the Fourteenth Amendment to the U.S.
Constitution and under the Texas Constitution.
      During testimony of State's witness Tom Enriquez, the State asked him if he told Detective
Sanders he was in fear. The witness answered, "Yes, sir."
            Q   Do you know the Morales family?
            A   Yes, sir.
            Q   Are you afraid of them also?
            A   Yes, sir.
      [DEFENSE COUNSEL]: I object Judge, that has no relevance.
      THE COURT: Sustained.
      [DEFENSE COUNSEL]: I ask that the jury be instructed to disregard.
      THE COURT: I instruct the jury to disregard for any purpose.
      [DEFENSE COUNSEL]: Move for a mistrial.
      THE COURT: Overruled.
      Defendant's objection at trial to the question was on the ground of relevancy; his objection
on appeal is that he was denied due process of law and a fair trial. To preserve a complaint
regarding admission of evidence, the objection made at trial must comport with the objection
raised on appeal, which it does not in this case. Goodman v. State, (Tex. Crim. App.) 701
S.W.2d 850, 864; Hodge v. State, (Tex. Crim. App.) 631 S.W.2d 754; Nelson v. State, (Tex.
Crim. App.) 607 S.W.2d 554. Assuming, without deciding, that the complained of testimony was
inadmissible and that error was preserved, we hold that the sustaining of defendant's objection and
the court's instruction to the jury to disregard cured any harm. Rogers v. State, (Tex.
App.—Houston [1st Dist.] 725 S.W.2d 350, 359; Brown v. State, (Tex. Crim. App.) 692 S.W.2d
497, 501. The court did not err when it denied the mistrial. Point one is overruled.
      Point two asserts the trial court erred in refusing to allow testimony that Pete Espinosa, who
was seen with the victim prior to death and who supplied the victim with controlled substances for
resale, was found in possession of controlled substances, large amounts of money, and a pistol on
the day after the victim's death, and such refusal denied [defendant] a fair trial.
      At trial there was testimony that the victim was in possession of 50 pounds of marihuana and
$10,000 prior to his death. Defendant, in an attempt to show that someone other than defendant
committed the murder of Lopez, sought to introduce evidence that Pete Espinosa had supplied
Lopez with a large amount of marihuana the day before the murder; that Espinosa was stopped by
the police the day after the murder and the search of his vehicle revealed two pounds of
marihuana, a gun and $1,150 in money. Defendant contends the above shows another person's
motive and ability to commit the offense. The trial court sustained the State's objection to the
evidence.
      Before evidence of the guilt of another party to the charged offense is admissible, three
requirements must be met:
●The state is relying on circumstantial evidence for conviction;
●The guilt of such party is inconsistent with the guilt of the accused on trial;
●The facts show that such party was so situated that he might have committed the
crime.
      The State here was not relying on circumstantial evidence to convict defendant. Witness Tom
Enriquez testified that defendant told him that he [defendant] was the one that killed Emelio
Lopez. Enriquez later testified again that defendant said, "I told you I killed him. I don't want
you to tell nobody nothing. You tell your boy the same thing, or I swear . . . ."
      Direct testimony from any source that the defendant was the person who caused the death of
Lopez results in this case being one that is based on direct evidence and not circumstantial
evidence. Barefoot v. State, (Tex. Crim. App.) 596 S.W.2d 875, 880; Moore v. State, (Tex.
Crim. App.) 700 S.W.2d 193, 198. The trial court did not err in refusing to admit the evidence
complained of by defendant. Point two is overruled.
      Point three asserts the trial court erred in refusing to grant a mistrial after determining that
the State violated Rule 613, Texas Rules of Criminal Evidence, and Article 36.06 of the Texas
Code of Criminal Procedure.
      The above rules provide that witnesses, under "the rule," are not to converse with each other
or with any person concerning the case except by permission of the court. "The rule" was invoked
by the State and all witnesses were so instructed. Detective Sanders was called as a witness by
both the State and the defendant. Vinnie Laredo was called as a witness by the defendant. 
Detective Sanders had testified. He was an investigator for the State. The State's attorney, on the
evening after Sanders had testified, asked him to locate a person named "Vinnie" who was a
potential defense witness and find out what he remembered. Detective Sanders did find "Vinnie
Laredo" and asked him to recall his knowledge of certain events occurring the day before and the
day of the murder, which he did. There is no showing that defendant was injured thereby. There
is no question that "the rule" was violated. Defendant moved for a mistrial which was denied by
the trial court.
      While "the rule" should be complied with, not every violation is reversible error. Beets v.
State, (Tex.Crim. App.) 767 S.W.2d 711, 746; Hougham v. State, (Tex. Crim. App.) 659 S.W.2d
410, 413. Enforcement of the rule is within the sound discretion of the trial court and will not be
disturbed absent a showing of abuse of that discretion or injury to the defendant. Green v. State,
(Tex. Crim. App.) 682 S.W.2d 271, 294; Hartsook v. State, (Tex. Crim. App.) 244 S.W.2d 830,
831.
      Defendant called Vinnie Laredo to the stand. There is no showing his testimony was affected
in any way by his conversation with Detective Sanders. Sanders only discussed with Laredo the
date of an automobile collision and a funeral that occurred close to the time of the murder. The
trial court did not err in refusing to grant a mistrial. Point three is overruled.
      Point four asserts the trial court erred in placing first the form verdict of guilty in the first
main charge of the court and that such constituted a comment on the weight of the evidence and
violated the [defendant's] right to the presumption of innocence. 
      Point six asserts the trial court erred in placing first the form verdict of finding the allegations
of prior convictions true in the second main charge of the court and that such constituted a
comment on the weight of the evidence and violated [defendant's] right to presumption of
innocence.
      Defendant cites no authority and no where in the record can harm to defendant be found by
virtue of the order of verdict forms in the court's charge. Points four and six are without merit
and are overruled.
      Point five contends that the comments by the prosecutor during argument in the guilt-innocence phase alluding to the failure of the defendant to testify were manifestly improper, could
not be cured by an instruction to disregard, and denied [defendant] a fair trial, due process of law,
and denied [defendant] his right against self incrimination, all in violation of the United States and
Texas Constitutions.
      During the final argument in the guilt-innocence phase, the State argued: "We don't have a
gun. The only person who would know where the gun would be, the defendant, I'm sure had an
opportunity to put the gun somewhere."
[DEFENSE COUNSEL]: I'm going to object at this time. That's an improper
comment on the defendant's failure to testify.
THE COURT: Overruled.
THE STATE: The defendant would certainly have an ability to dispose of the gun
to where we're never going to find it. You don't expect him to come running in and say,
`Here's my gun.'
[DEFENSE COUNSEL]: I'm going to object again. That's a comment on . . .
THE COURT: Sustain the objection. I instruct the jury they will disregard the last
statement of counsel for the State for any purpose.
[DEFENSE COUNSEL]: We move for a mistrial.
THE COURT: Overruled.
THE STATE: Folks, I just want you to think of the evidence you heard. Use your
common sense. A person who uses a gun is going to hide it in a crime.
[DEFENSE COUNSEL]: I'm going to object again. He's going back into the same
area again.
THE COURT: Overruled.
      Earlier in the argument, counsel for defendant questioned: "Did you hear anybody testify
about any results of any tests on bullets?" Answer: "No." Question: "Did you hear any testimony
about what caliber they were?" Answer: "No." Question: "Did you hear any testimony about any
rifle, what type of gun they could have been fired from?" Answer: "No." Question: "Did you
hear any testimony showing [defendant] has ever in his home, on his person, ever possessed a
gun? And you better believe it, if they had it, they would have brought it to you folks."
      The argument complained of by defendant was in response to the earlier quoted argument of
the defendant's counsel. 
      A prosecutor may answer jury argument of opposing counsel. Andujo v. State, (Tex. Crim.
App.) 755 S.W.2d 138, 144; Johnson v. State, (Tex. Crim. App.) 611 S.W.2d 649, 650. The
State's response to an invited argument may even be a comment on defendant's failure to testify. 
Nethery v. State, (Tex. Crim. App.) 692 S.W.2d 686, 702. Assuming, without deciding, that the
complained of argument was error, we hold beyond a reasonable doubt that such did not contribute
to the verdict. Tex. R. App. P., 81(b)(2); Orona v. State, (Tex. Crim. App.) 791 S.W.2d 125. 
Point five is overruled.
      The judgment is affirmed.
 
 
                                                                                     FRANK G. McDONALD
                                                                                     Chief Justice (Retired)

Before Chief Justice Thomas,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed June 16, 1993
Do not publish