NUMBER
13-01-00100-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                      CORPUS CHRISTI B EDINBURG

 

 

CELESTINO
VILLARREAL,                                                    Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                       Appellee.

 

 

     On
appeal from the 105th District Court
 of Nueces County, Texas.

 

 

                                   O P I N I O N

 

       Before Chief
Justice Valdez and Justices Hinojosa and Rodriguez

                                 Opinion
by Justice Hinojosa

 








A jury found appellant, Celestino
Villarreal, guilty of the offense of burglary of a habitation with intent to
commit theft.[1]  After he pleaded true to an allegation in the
indictment that he was a repeat felony offender, the trial court assessed
appellant=s punishment at twenty-five years
imprisonment.  By four points of error,
appellant contends: (1) the evidence is legally and factually insufficient to
sustain his conviction; (2) the trial court erred in overruling his objection
to the prosecutor=s comment that he failed to
testify; and (3) the trial court erred in denying his motion for new trial
based on newly discovered evidence.  We
affirm.

A. 
Background

After receiving a report of a
burglary, Corpus Christi police were dispatched to the residence of Jason
Stradtner and his roommate, Joel Sullivan. 
At the scene, a police officer noticed that a rear door from the garage
to the outside had been forced open and that a door between the garage and the
residential part of the house had also been forced open.  The frame of the door was cracked, and the
hardware from the door was lying on the kitchen floor.  Inside, the two bedrooms of the house had
been Aransacked@ with items moved, papers thrown
about, and drawers opened.

Stradtner testified he called the police
after returning home and finding the forced entry and ransacked bedrooms.  Stradtner=s
checkbooks and $200.00 in cash were missing. 
Several items in Stradtner=s room were displaced and papers
were thrown everywhere.  In Sullivan=s room, Stradtner found Sullivan=s gym bag filled with compact discs
(ACD@)
and covers.

Sullivan testified that the CDs
belonged to him and that he kept between thirty-five to forty CDs in his
room.  Sullivan admitted that he had lent
out one or two of the CDs to a long-time friend for about two weeks.  Neither Stradtner nor Sullivan knew
appellant, and neither roommate had given him permission to be in the house on
June 5, 2000, the day of the burglary.








A crime scene technician dusted the
house for fingerprints, including anything that might have been moved or
touched during the burglary.  The
technician was able to lift fingerprints from one or more CD covers, a digital
clock radio, a small pocket television, and a computer.  Later, Katrina Aggelopoulos, a latent
fingerprint examiner with the Corpus Christi Police Department, determined that
fingerprints taken from one or more CD covers belonged to appellant.

B. 
Sufficiency of the Evidence

By his first point of error,
appellant complains the evidence is legally insufficient to support his
conviction.  By his second point of
error, appellant contends the evidence is factually insufficient to support his
conviction.  Appellant asserts that
evidence of fingerprints on a small portable object, such as a CD cover, is
neither legally nor factually sufficient to permit a jury to find all the
elements of the offense of burglary of a habitation beyond a reasonable doubt,
because it fails to show that the fingerprints were left on the CD cover during
the commission of the offense.

1. 
Standard of Review








When we review the legal
sufficiency of the evidence, we view all the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000).  In
conducting this analysis, we may not re-weigh the evidence and substitute our
judgment for that of the jury.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  The standard is the same for both direct and
circumstantial evidence cases.  Kutzner
v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); Vela v. State,
771 S.W.2d 659, 660 (Tex. App.CCorpus Christi 1989, pet. ref'd).

When we review the factual
sufficiency of the evidence, we review all of the evidence and set aside the
verdict only if (1) the evidence is so weak as to be clearly wrong and
manifestly unjust or (2) the verdict is against the great weight of the
evidence.  Johnson, 23 S.W.3d at 11.  We
are not bound to view the evidence in the light most favorable to the
prosecution, and may consider the testimony of all the witnesses.  Id. at 10-12.  Disagreeing with the fact finder=s determination is appropriate only
when the record clearly indicates that such a step is necessary to arrest the
occurrence of a manifest injustice; otherwise, due deference must be accorded
the fact finder=s determinations, particularly
those concerning the weight and credibility of the evidence.  Id.

2. 
Analysis

To establish the offense of
burglary of a habitation with intent to commit theft, the State must prove that
the defendant entered a habitation without the effective consent of the owner,
with the intent to commit a theft.  Tex. Pen. Code Ann. ' 30.02(a)(1)
(Vernon Supp. 2002).

It is undisputed that someone pried
open the rear door leading into Stradtner=s garage from the outside and the
door leading from the garage to the inside of the home.  The frames of both doors were broken and
hardware from the interior door was found on the kitchen floor.  Neither Stradtner nor Sullivan ever gave
appellant consent to enter the home. 
Stradtner=s checkbooks and $200.00 in cash
were taken from his room.








As to the identity of the burglar,
the record establishes that fingerprints, positively identified as those of
appellant=s, were found on one or more CD
covers located in Sullivan=s bedroom.  Appellant contends the evidence fails to show
that his fingerprints were left on a CD cover during the commission of the
offense.  He argues that since
fingerprints can remain on a CD cover for a number of years, his fingerprints
possibly could have been placed on the CD cover prior to the offense, such as
when Sullivan loaned CDs to his friends, or when there was a party at the
house, or before Sullivan purchased the CDs.

Generally, fingerprint evidence
alone will be sufficient to sustain a conviction if the evidence shows that the
prints were necessarily made at the time of the burglary.  Bowen v. State, 460 S.W.2d 421, 423 (Tex.
Crim. App. 1970); Nieto v. State, 767 S.W.2d 905, 908 (Tex. App.BCorpus Christi 1989, no pet.).  One important factor in determining the
sufficiency of fingerprint evidence is the extent to which the fingerprinted
object was accessible to the defendant.  Phelps v. State, 594 S.W.2d 434, 436 (Tex. Crim. App. 1980).








After reviewing the record, we
conclude appellant=s argument B that his fingerprints could have
been left on the CD covers at a time other than during the commission of the
offense B is unsupported by the record.  Sullivan testified that of the thirty-five to
forty CDs he kept in his room, he only lent out one or two of them to a close
friend with an understanding that no one else was to use them.  Sullivan purchased all the CDs new and when
either roommate had guests in the home, the guests did not have permission to
enter Sullivan=s room.  Stradtner and Sullivan both testified that they
did not know appellant and knew no reason for him to be in the house on the day
of the burglary.  Taken as a whole, the
evidence tends to show that the fingerprints were necessarily made at the time
of the burglary and negates the probability that they were made prior to the
time of the burglary.  See Phelps,
594 S.W.2d at 436; Nieto, 767 S.W.2d at
908.  Evidence is sufficient even though
highly unlikely possibilities could account for the presence of the defendant=s fingerprints in a manner
consistent with innocence.  Nieto,
767 S.W.2d at 909.

We conclude that any rational trier
of fact could have found the essential elements of the offense of burglary of a
habitation with intent to commit theft beyond a reasonable doubt.  Therefore, we hold the evidence is legally
sufficient to support appellant=s conviction.  Appellant=s
first point of error is overruled.

We further conclude the evidence is
not so weak as to be clearly wrong and manifestly unjust or that the verdict is
against the great weight of the evidence. 
Therefore, we hold the evidence is factually sufficient to support
appellant=s conviction.  Appellant=s
second point of error is overruled.

C.  Prosecutor=s Comment

By his third point of error,
appellant contends the trial court erred in overruling his objection to the
prosecutor=s comment that he failed to
testify.  Specifically, appellant
complains of the following portion of the State=s
final argument:

I do not have to prove to you
beyond a reasonable doubt that five years ago that maybe he touched it, maybe
not.  No, no.  Your job is look at reason and common
sense.  My job is to say that man did
it.  And how do I do it? I tell you,
listen, his fingerprints are there.  It=s the best evidence, better than DNA,
better than eyewitness.  How does
[sic] his fingerprints get on that CD cover? 
He can=t even offer a suggestion how that B

 

After appellant objected, the trial
court overruled the objection and the prosecutor continued:

He cannot answer that question of
how this Defendant=s fingerprints got on it.  All they can do is throw out suggestion.  And what is his suggestion?  That maybe Mr. Villarreal five B four or five years ago somehow
touched the same exact CD that Mr. Joel Sullivan bought and that somehow it
remained on the CD five years later, keeping in mind that Mr. Sullivan has
played the CD. 

 








Appellant asserts these remarks
violated article 38.08 of the Texas Code of Criminal Procedure, and the
self-incrimination provisions of the United States and Texas Constitutions, by
specifically referring to appellant=s failure to answer the question of
how his fingerprints were placed on the CD cover.

A comment upon a defendant=s failure to testify violates the
Fifth Amendment of the United States Constitution, Article I, Section 10 of the
Texas Constitution, and article 38.08 of the Texas Code of Criminal
Procedure.  Griffin v. California,
380 U.S. 609, 613 (1965); Cook v. State, 702 S.W.2d 597, 599 (Tex. Crim.
App. 1984); Bird v. State, 527 S.W.2d 891, 893 (Tex. Crim. App.
1975).  To violate appellant=s constitutional and statutory
rights, the objectionable comment, viewed from the jury=s perspective, Amust be manifestly intended to be
or of such a character that the jury would necessarily and naturally take it as
a comment on the accused=s failure to testify.@ Fuentes v. State, 991
S.W.2d 267, 275 (Tex. Crim. App. 1999) (quoting Banks v. State, 643
S.W.2d 129, 134 (Tex. Crim. App. 1982)). 
The argument is improper if it directs the jury=s attention to an absence of testimony
only the defendant could supply.  Moore
v. State, 849 S.W.2d 350, 352 (Tex. Crim. App. 1993) (Baird, J.,
concurring).  However, if the language
used can be reasonably construed as referring to the appellant=s failure to produce evidence other
than his own testimony, it is not an improper
remark.  Nowlin v.
State, 507 S.W.2d 534, 536 (Tex. Crim. App. 1974).  The facts and circumstances of each case must
be analyzed to determine whether the language directs the jury to the defendant=s failure to testify.  Dickinson v. State, 685 S.W.2d 320, 323 (Tex. Crim.
App. 1984).








In his final argument, appellant=s counsel suggested several
scenarios of how appellant=s fingerprints may have been placed
on the CD covers, including, when friends were visiting, when the CDs were
loaned to a friend, or when the CDs were originally purchased.  The prosecutor may answer opposing counsel=s jury argument so long as the
response does not exceed the scope of the invitation.  Andujo v. State, 755 S.W.2d 138, 144 (Tex.
Crim. App. 1988); Martinez v. State, 851 S.W.2d 387, 389 (Tex. App.BCorpus Christi 1993, pet. ref=d). 
The record reflects the prosecutor was responding to appellant=s counsel=s final argument, suggesting how
the fingerprints might have been left on the CD covers.  

Accordingly, we conclude the
prosecutor was referring to appellant=s counsel=s lack of plausible suggestions and
not commenting on appellant=s failure to testify.  This is proper even if the comment indirectly
alluded to the defendant=s failure to testify.  Porter v. State, 601
S.W.2d 721, 723 (Tex. Crim. App. 1980); Martinez, 851 S.W.2d at
390.  A mere implication or indirect allusion to a
defendant=s failure to testify will not
result in reversible error.  Staley v. State, 887 S.W.2d 885, 895 (Tex. Crim. App. 1994);
Allen v. State, 693 S.W.2d 380, 386 (Tex. Crim. App. 1984).  We cannot conclude that the language used was
manifestly intended or was of such a character that the jury would necessarily
and naturally take it to be a comment on the failure of the appellant to
testify.  See Fuentes, 991 S.W.2d at 275.








Further, the court=s charge instructed the jury that a
defendant=s election not to testify could not
be taken as a factual circumstance against him and could play no role in the
jury=s deliberation.  We conclude the prosecutor=s comment was not so blatant that
it rendered an instruction to disregard ineffective.  Thus, any error was cured by the trial court=s instruction to disregard.  Moore v. State, 999
S.W.2d 385, 405-06 (Tex. Crim. App. 1999).  Appellant=s
third point of error is overruled.

D. 
Motion for New Trial Based on
Newly Discovered Evidence

By his fourth point of error, appellant
contends the trial court erred by not granting his motion for new trial based
on newly discovered evidence establishing he was with his mother and sister at
the time the burglary occurred.

We review the denial of a motion
for new trial based on newly discovered evidence under an abuse of discretion
standard of review.  Lewis
v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  Motions for new trial based on newly
discovered evidence traditionally lack favor with the courts and are viewed
with great caution.  Drew v. State,
743 S.W.2d 207, 225-26 (Tex. Crim. App. 1987). 
We do not substitute our judgment for that of the trial court, rather, we decide whether the trial court=s decision was arbitrary or
unreasonable.  Id. 
A trial court is arbitrary or unreasonable in denying a motion for new
trial if the record reflects:  (1) the
newly-discovered evidence was unknown to the movant at the time of trial; (2)
the movant=s failure to discover the evidence
was not due to his want of diligence; (3) the evidence is admissible and not
merely cumulative, corroborative, collateral, or impeaching; and (4) the
evidence is probably true and would probably bring about a different result in
another trial.  Moore v. State,
882 S.W.2d 844, 849 (Tex. Crim. App. 1994); Sawyer v. State, 778 S.W.2d
541, 545 (Tex. App.BCorpus
Christi 1989, pet. ref=d).








In support of his motion for new
trial, appellant presented evidence from his sister, Carol Escamilla, that they
were together, visiting their mother at the hospital on June
 5, 2000,
the day the burglary occurred.  Escamilla
testified that she received a telephone call in the early morning from her
mother=s nursing home informing her that
her mother had fallen and had broken her paralyzed left arm.  She immediately went to the hospital and
stayed with her mother all night. 
Appellant arrived at the hospital between 8:15 and 8:20 a.m. and stayed with his sister all
day, finally leaving at approximately 4:30 p.m. 
Escamilla said she was not aware of appellant=s conviction until after the trial,
when her mother told her.

Appellant has failed to show that
this Anew@
evidence was unknown to him before the trial. 
Indeed, the evidence appellant presented established that he knew of the
existence of potential alibi witnesses prior to the trial.  Appellant argues that Escamilla was not aware
of his conviction until after the trial, and thus, could not have come forward
sooner.  However, the record does not
show that Escamilla=s alibi testimony was unknown to appellant
at the time of the trial.  See Drew,
743 S.W.2d at 226. 
Since appellant must have known prior to the trial where he was, what he
was doing, and who he was with on June 5, 2000, Escamilla=s alibi evidence cannot be
considered Anewly discovered.@ 
See Baker v. State, 504 S.W.2d 872, 875
(Tex. Crim. App. 1974).

Likewise, appellant=s failure to present alibi
testimony was due to his lack of diligence. 
Clearly, appellant knew the whereabouts of his mother and sister.  Escamilla was available to testify and any
failure to secure her testimony was due to appellant=s lack of diligence.  Where the appellant knows of a witness and
fails to inform his attorney of the existence of the witness, the trial court
does not err by overruling a motion for new trial based on newly discovered
evidence.  Sawyer, 778 S.W.2d at 545. 
Accordingly, we conclude the trial court did not abuse its discretion in
denying appellant=s motion for new trial.  We overrule appellant=s fourth point of error.








The judgment of the trial court is
affirmed.

 

FEDERICO G. HINOJOSA

Justice

 

Publish.  Tex. R. App. P. 47.3.

 

Opinion delivered and filed this the

27th day of June, 2002.











[1] See Tex. Pen. Code Ann. ' 30.02 (Vernon Supp.
2002).