**Opinion issued February 21, 2013.**



**In The**

**Court of Appeals**

**For The**

**First District of Texas**

————————————

**NO. 01-12-00396-CR**

———————————

**KEVIN CASTRO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1318800**

**MEMORANDUM OPINION**

A jury found appellant Kevin Castro guilty of the first-degree felony offense aggravated robbery with a deadly weapon and assessed a punishment of fifty years' imprisonment.[1]  *See* TEX. PENAL CODE ANN. § 29.03 (West 2012).  On

---

[1]     Castro pleaded true to two enhancement paragraphs identifying Castro's two prior convictions—one in 2008 and one in 2009—for felony possession of a controlled

appeal, Castro contends that (1) the trial court erred by failing sua sponte to instruct the jury on article 38.23 of the Texas Code of Criminal Procedure, and (2) he was denied effective assistance of counsel when his trial attorney failed either to object or move to suppress a tainted in-court identification, or to "sufficiently develop facts in the record regarding appellant's physical characteristics [as] prejudicial." We affirm.

## Background

On the morning of September 1, 2011, Carlos Ayala was at his apartment complex working on his car. Two men, one of whom was yielding an automatic handgun, approached him, asked what he was doing, and stole his wallet. The first assailant, later identified as Castro, put the gun to Ayala's stomach and said "I'm going to rob you." Ayala threw his wallet. When asked why he threw it, he told the assailants to "[p]ick it up." The second assailant then told the first assailant to "shoot him," but he did not. The encounter lasted close to a minute. Ayala ran to his apartment to call the police. While running, Ayala fell, turned back, and saw the assailants again. When he reached his apartment, Ayala saw the two men drive off.

---

substance. During the penalty phase, the State introduced evidence of other prior convictions, including 2005 and 2008 convictions for unlawfully carrying a weapon, a 2008 conviction for burglary of a habitation, and a 2005 conviction for failure to identify oneself to a police officer. Under these enhancement paragraphs, Castro was subject to a punishment of "a minimum of 25 years, [to] a maximum of 99 years or life" in prison.

2

Ayala's wallet contained his driver's license, check stubs, a credit card and a Social Security card. Ayala described the two assailants[2] and their vehicle[3] to the first responding officer, who sent an alert over radio broadcast. A second police officer spotted the car, Castro, and a second man, all matching Ayala's descriptions, at a nearby convenience store. When the two suspects drove out of the parking area, the officer pulled them over for a "felony traffic stop." The officer initially arrested the men for failing to wear a seatbelt and having an expired car registration sticker. A search of the vehicle yielded a loaded, semiautomatic handgun and a tax identification card bearing Ayala's name. A wallet matching Ayala's description was recovered from the second assailant's possession.

---

[2] Ayala described the first assailant as a "very thin," "smaller statured Hispanic male," approximately four feet eleven inches to five feet two inches tall, weighing approximately 160 pounds, with black crew-cut hair, a short mustache and a light brown complexion. He was wearing a backwards "golf caddy" or "kangaroo-type" hat, shorts, and a white shirt. Ayala testified that due to his nervousness after the incident, he had originally mistaken the color of the hat, describing it as black. At trial, he testified that the hat was white. The officer who spotted the men before their arrest described the hat as beige. During closing statements, appellant's counsel noted to the jury that by "common sense, looking at [Castro] . . . [h]e's way taller than [described]." An arrest report in the clerk's record describes Castro's height as five feet, eight inches and his weight as 155 pounds.

[3] Ayala described the two men as driving a maroon car. The only other witness to the offense was a maintenance worker at the apartment, who informed the responding officer that "he had also seen a maroon Chevy Suburban going by." He did not, however, provide a sufficient description of either of the assailants.

The indictment charged that Castro "unlawfully, while in the course of committing theft of property owned by Carlos Ayala, and with intent to obtain and maintain control of the property, intentionally and knowingly threaten[ed] and place[d] Carlos Ayala in fear of imminent bodily injury and death," while yielding and exhibiting a deadly weapon—a firearm. Castro pleaded not guilty to the charge.

At trial, the witnesses gave conflicting testimony about the events following Castro's arrest. Ayala recounted that the police instructed him to come to the scene of the arrest. He drove there and stayed for approximately six to seven minutes. When Ayala arrived, both Castro and the second suspect were standing in front of their truck in handcuffs. At the officer's request, Ayala, while standing about fifty to sixty feet away, identified the truck and both suspects.

The police officers present at the arrest and search had a different account of the events. Officers Yzquierdo and Adams both testified that the Ayala had not seen Castro. Officer Yzquierdo testified that he did not ask Ayala to identify the appellant, the co-defendant or the car at the scene. Officer Adams testified that he "made sure that [Ayala] did not see" Castro, the co-defendant or the vehicle. He explained that the appellant and the co-defendant were in the "backseat of a police car" when he met with Ayala. Both officers testified that they did not conduct any formal identification process at the scene.

4

Following the arrest, the officers took the suspects to a nearby police station. Ayala followed in his own car. When Ayala arrived at the station, the officers showed him a live lineup and instructed him to identify the alleged assailant. An officer who worked with Ayala during the identification process described his demeanor as "frightened." The officers at the police station had difficulty persuading Castro to cooperate and subsequently brought him into the lineup in a "full nelson" headlock; the officers repeated this procedure on every man in the lineup to maintain consistency. Ayala did not identify Castro in the live lineup— he later explained that the defendant made distorting faces during the process and put his chin down.

Approximately forty minutes after conducting the live lineup, the police asked Ayala to identify his assailant in a photo array. The photo spread contained a different set of individuals from the live lineup; "the only common denominator" between the live lineup and the photo array was Castro. Ayala, however, could not identify Castro in the first showing of the photo array. Thus, a police detective showed Ayala his wallet and identification card, seized from the assailants, and told Ayala, "You need to show me who it is." The officers showed Ayala the photo array again. At that point, Ayala positively identified Castro and signed his picture.

At trial, Ayala identified Castro as the man who robbed him. Castro's trial counsel did not object. His trial counsel had no objections to the guilt-innocence charge, nor did he request that the jury be instructed to disregard evidence obtained in violation of federal or Texas law.

## Discussion

### I. *Failure to instruct the jury sua sponte on article 38.23 of the Texas Code of Criminal Procedure*

Castro claims that the trial court erred in not sua sponte providing an article 38.23 jury instruction because: (1) the jury heard disputed evidence about whether Ayala identified the appellant at the scene of the arrest; (2) Castro's trial counsel's cross-examinations and his closing argument raised the contention that that the events leading up to Castro's formal identification were "unlawfully suggestive;" and (3) that contested fact issue was material to the reliability of Ayala's in-court identification of Castro.

#### A. *Standard of review*

A trial court must submit to the jury "the law applicable to the case." *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2012); *Bolden v. State,* 73 S.W.3d 428, 431 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). When a statute requires an instruction under the circumstances, that instruction is "law applicable to the case," and the trial court must instruct the jury regarding what is required under the statute. *Oursbourn v. State,* 259 S.W.3d 159, 180–81 (Tex. Crim. App. 2008).

6

## B. *Law and analysis*

Texas Code of Criminal Procedure article 38.23(a) provides that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2012). The Texas Court of Criminal Appeals has held that article 38.23, by its terms, applies only to illegally obtained evidence, not to in-court identifications. *Allen v. State*, 511 S.W.2d 53, 54 (Tex. Crim. App. 1974); *see Andujo v. State*, 755 S.W.2d 138, 143 (Tex. Crim. App. 1988). Further, a challenge to the accuracy of witness identification raises the defensive issue of mistaken identification. *See Wilson v. State*, 581 S.W.2d 661, 663 (Tex. Crim. App. 1979) (observing that mistaken identification is traditional defensive issue, because State has burden to prove identity of defendant as party who committed crime charged). A trial court must submit the issue if the evidence warrants it and the defendant timely requests it. *See id.* The trial court, however, has no statutory duty to sua sponte instruct the jury on an unrequested defensive issue, because a defensive issue is not "applicable to the case" unless the

7

defendant timely requests the issue or objects to the issue's omission from the jury charge. *Oursborn*, 259 S.W.3d at 180. No such request or objection occurred here. Accordingly, we hold that the trial court did not err by failing to sua sponte instruct the jury on the issue of Ayala's in-court identification.

## II. *Ineffective Assistance of Counsel*

In his second point of error, Castro argues that "the cumulative effect of [his] trial counsel's errors denied [him the] effective assistance of counsel." Castro points to his trial counsel's failure (1) to object to Ayala's in-court identification of Castro, (2) to move to suppress Ayala's anticipated testimony, and (3) to sufficiently develop the evidence regarding appellant's physical characteristics.

### A. *Standard of review*

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mitchell*, 68 S.W.3d at 642. A failure to make a showing under either prong

8

defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

In analyzing an ineffective assistance claim, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2052). Before an appellate court may find that counsel was ineffective, the record must affirmatively demonstrate counsel's deficiency; "the court must not engage in retrospective speculation." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez*, 343 S.W.3d at 143 (citing *Robertson*, 187 S.W.3d at 483). Isolated instances of a failure to object to inadmissible argument or

evidence do not necessarily render counsel ineffective. *See Robertson*, 187 S.W.3d at 483.

### B.      Analysis

Under the first prong of *Strickland*, appellant must show that his trial counsel's performance fell below the objective standard of reasonableness. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064 ("This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."). The appellant contends that Ayala's in-court identification of Castro was tainted, as it was based on an impermissibly suggestive pre-trial identification process, and his counsel erred in failing to move to suppress Ayala's anticipated identification of Castro as the assailant, to object to Ayala's in-court testimony, and to elicit and preserve evidence of a more detailed physical description of Ayala.

The record contains no reason or explanation as to why trial counsel did not move to suppress Ayala's in-court identification. Absent an explanation, Castro cannot satisfy the first prong of *Strickland*. *Bone v. State*, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002), *cited in Greene v. State*, 124 S.W.3d 789, 791–92 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The Court of Criminal Appeals has explained that "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."

*Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (quoting *Thompson*, 9 S.W.3d at 814). While a single point of egregious error may render a counsel's performance ineffective, in only rare instances will the record on direct appeal provide sufficient evidence. *Thompson*, 9 S.W.3d at 813 (citing *Jackson v. State*, 766 S.W.2d 504, 508 (Tex. Crim. App. 1985)); *Mallet*, 65 S.W.3d at 63. In *Thompson*, the appellant contended that his trial counsel was ineffective after he failed to object to the introduction of "testimony already declared inadmissible hearsay" and then failed to "request a mistrial" after its introduction. 9 S.W.3d at 809. The Court of Criminal Appeals held that the record, silent as to a "discernible explanation" for counsel's motivations, was insufficient to satisfy *Strickland*, because counsel could have had a reasonable motive for his actions, under the specific facts of the case. *Id.* at 814.

### 2. *Reasonable probability of a different result*

Castro likewise fails to prove the second prong, that it is "reasonabl[y] probab[le] that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Bone*, 77 S.W.3d at 833 (quoting (*Mitchell*, 68 S.W.3d at 642); *see Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064 ("[T]he defendant must show that the deficient performance prejudiced the defense ," and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.").

Putting aside Ayala's in-court identification of Castro, the remaining evidence would allow a reasonable jury to find Castro guilty of the robbery. *See Green*, 124 S.W.3d at 792. Ayala described Castro with reasonable accuracy to the first responding officer before the pretrial identification procedure. A third party confirmed that, close to the time of the robbery, he saw a maroon Suburban—the same type of vehicle that Castro was arrested in—near the apartment complex. The arresting officer found Castro in the Suburban, as well as Ayala's tax identification card and a] semi-automatic handgun that matched Ayala's description of the gun that Castro pointed at him. This evidence sufficiently ties Castro to the crime such that Castro has not shown a probable likelihood that the outcome would be different had counsel successfully objected to the line-up.

## Conclusion

We hold that the trial court had no sua sponte obligation to instruct the jury on article 38.23 of the Texas Code of Criminal Procedure. We further hold that Castro has not met his burden to show that he was denied effective assistance of counsel. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

12