Affirmed and Memorandum Opinion filed January 29, 2008













Affirmed and Memorandum Opinion filed January 29, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00888-CR

____________

 

LUTHER RAY HUDSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 





 

On Appeal from the 185th
District Court

Harris County,
Texas

Trial Court Cause No. 1095420

 





 

M E M O R A N D U M   O P I N I O N

Appellant Luther Ray Hudson appeals his conviction for
aggravated robbery complaining (1) the evidence is legally and factually
insufficient, (2) the in-court identification was tainted by an out-of-court
identification from an impermissibly suggestive photo array, (3) the jury
charge contained error, and (4) the trial court erred in denying appellant=s motion for new
trial.  We affirm.

 

I.  Factual and Procedural
Background

Police responded to a call for robbery involving four young
men and the complainant, Jose Corea, his wife, and his stepson, Javier. 
Corea was helping Javier move into an apartment at night.  They were
moving items in the back of Corea=s pick-up truck
when another vehicle blocked the truck in the apartment complex parking
lot.  Four, young black men emerged from the vehicle.  The men were
armed and wore grey, hooded sweatshirts with the hoods pulled over their
heads.  One man placed the barrel of a pistol-grip, sawed-off shotgun
against Corea=s head, and another man demanded the keys to the truck
from Javier.  The man pressing the gun to Corea=s head initially
wore a ski mask, but, at some point, the mask fell off, and Corea was able to
see the man=s face for several seconds.

When one of the bandits cocked a gun against Javier=s head and
threatened to kill him, Corea handed over the keys.  Two men forced Corea=s wife from inside
the cab of the truck and then fled in Corea=s truck; the other
men left in the vehicle in which they had arrived. Police recovered the
abandoned truck the next day.  

The apartment complex=s video
surveillance equipment recorded the incident.  Corea and his wife each
described the parking lot as being well lit.  Corea maintained he would be
able to recognize the robber if he saw him, but his wife acknowledged she could
not.

One month after the robbery, police arrested appellant on
charges unrelated to the robbery.  As part of that investigation, police
found a ski mask and several guns, including a sawed-off, pistol-grip shotgun
in appellant=s vehicle.

 

Based on information contained in a robbery offense report
and based on the fact that appellant had a sawed-off shotgun in his possession,
a police investigator for the robbery compiled a photo array to show
Corea.  Appellant=s photo was among those included in the
array.  In that photo, appellant wore a dark-colored, hooded sweatshirt
with the hood pulled down at appellant=s shoulders. 
After viewing the photos for several seconds, Corea identified appellant as the
robber who had held a gun to his head.

Appellant was charged with aggravated robbery, to which he
pleaded Anot guilty.@  Appellant
filed a motion to suppress Corea=s in-court
identification of appellant based on the pretrial photo array.  At a
hearing on this motion, Corea identified appellant as the robber who had held
the shotgun to his head.  The police investigator testified he selected
the photos for a photo array based on information contained in a robbery
offense report compiled by the responding officer.  The investigator
testified that the offense report described the robbers as black males in grey
hooded sweatshirts; one man, with a medium-colored complexion, was six feet
tall at two hundred pounds, and two other men were five feet and eight inches
tall at 160 pounds.  The police investigator explained that the Corea
robbery involved a shotgun, but the offense report did not mention ski
masks.  The investigator explained that because a sawed-off shotgun was
found in appellant=s car and based on information in the
robbery offense report, he created the photo array using photos of men who
looked like appellant.  The trial court denied appellant=s motion to
suppress. 

At the jury trial that followed, Corea identified the
shotgun and ski mask collected from appellant=s vehicle as being
consistent with or the same as the those used in the robbery.  Corea
identified appellant as one of the robbers.  The jury found appellant
guilty as charged.  Upon the jury=s recommendation,
the trial court ordered appellant placed in community supervision probation for
ten years. 

II.  Issues and Analysis

A.      Is the evidence
legally and factually sufficient to support appellant=s conviction?

 

In two issues, appellant challenges
the legal and factual sufficiency of the evidence identifying appellant as a
participant in the robbery.  Furthermore, in another issue, appellant
claims the trial court erred in denying his motion for an instructed verdict,
which is treated as a challenge to the legal sufficiency of the evidence. 
See Williams
v. State, 937 S.W.2d
479, 482 (Tex. Crim. App. 1996).  Appellant claims the following
facts are insufficient to support his conviction: 

$                  
The jury foreman
signed the verdict form in the area marked Anot guilty,@ which was scratched out, and the Aguilty@ portion was signed; 

$                  
There is a lack of
physical or circumstantial evidence; 

$                  
A lone eyewitness gave
varied testimony about reporting the ski mask and identified appellant only by
his hooded sweatshirt in the photo array; 

$                  
Neither the robbers= vehicle nor Corea=s stolen bank card, which was used,
could be traced to appellant; and 

$                  
Alibi evidence proved
appellant was at home in bed after working all day on the night of the robbery.

In evaluating a legal‑sufficiency challenge, we view
the evidence in the light most favorable to the verdict.  Wesbrook v.
State, 29 S.W.3d 103, 111 (Tex.
Crim. App. 2000).  The issue on appeal is not whether we, as a court,
believe the State=s evidence or believe that appellant=s evidence
outweighs the State=s evidence.  Wicker v. State,
667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not be
overturned unless it is irrational or unsupported by proof beyond a reasonable
doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes
v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury
may choose to believe or disbelieve any portion of the witnesses= testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  Therefore, if any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt, we must
affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim. App.
1997).

 

In
contrast, when evaluating a challenge to the factual sufficiency of the
evidence, we view all the evidence in a neutral light and inquire whether we
are able to say, with some objective basis in the record, that a conviction is Aclearly wrong@ or Amanifestly unjust@ because the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 414B17 (Tex.
Crim. App. 2006).  It is not enough that this court harbor a subjective
level of reasonable doubt to overturn a conviction that is founded on legally
sufficient evidence, and this court cannot declare that a conflict in the
evidence justifies a new trial simply because it disagrees with the jury=s resolution of that conflict.  Id. at 417. 
If this court determines the evidence is factually insufficient, it must
explain in exactly what way it perceives the conflicting evidence greatly to
preponderate against conviction.  Id.
at 414B17.  Our evaluation should not
intrude upon the fact finder=s role as the sole judge of the weight and credibility given
to any witness=s testimony.  See Fuentes, 991 S.W.2d at 271.  Unless
the court issues a memorandum opinion, in conducting a factual‑sufficiency
review, we are to address the evidence appellant claims is most important in
allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

A person commits the offense of robbery if, in the course
of committing theft and with intent to obtain and maintain control of property,
that person A(1) intentionally, knowingly, or recklessly causes
bodily injury to another; or (2) intentionally or knowingly threatens or places
another in fear of imminent bodily injury or death.@  Tex. Penal Code Ann. ' 29.02 (Vernon
2003).  The offense becomes aggravated robbery if the person committing
the robbery causes serious bodily injury to another or uses or exhibits a
deadly weapon.  Id.
' 29.03(a)(1), (2)
(Vernon 2003).  A sawed-off shotgun, such as what Corea testified was used
in this case, is a firearm and is considered a deadly weapon.  Id. ' 1.07(a)(17)(A)
(Vernon 2003); Rodriguez v. State, 644 S.W.2d 200, 203 (Tex. App.CSan Antonio 1982,
no pet.).

 

Corea testified the pistol-grip style sawed-off shot gun
and ski mask recovered from appellant were consistent with or similar to the
ones used in the robbery.  Corea and his wife both testified they feared
for their lives by the robbers= threats and use of guns.  Based on
his glimpse of the robber=s face in the well-lit parking lot, Corea
identified appellant[1]
as the robber who held the gun to his head before fleeing in Corea=s truck.  The testimony of a single
eye-witness, such as the complainant in this case, is sufficient to support a
felony conviction for aggravated robbery.  See Taplin v. State, No.
14-05-00194-CR, 2006 WL 397234, at *2B3 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d) (mem. op., not designated for publication); Johnson v.
State, 176 S.W.3d 74, 77B78 (Tex. App.CHouston [1st Dist.] 2004, pet. ref=d).  Therefore, a rational trier
of fact could have found the elements beyond a reasonable doubt.  See Johnson, 176 S.W.3d at 77. 

 

According to appellant, no physical evidence links him to
the charged offense except for Corea=s allegedly
mistaken identification of appellant based on the hooded shirt appellant wore in
the photo featured in the pretrial array.  Furthermore, appellant
complains of Corea=s inconsistent testimony regarding the ski
mask, alleging that Corea told authorities about a ski mask only after one such
mask was found in appellant=s possession and authorities showed it to
Corea.  According to appellant, the ski mask was left in his car after a
photo shoot for a musical compact disc cover, and he planned to use the guns to
apply for a concealed handgun permit.  Determining what weight to give any
testimonial evidence is within the sole province of the jury.  This
determination turns on an evaluation of credibility and demeanor.  See
id. at 78.  Appellant also offered an alibi that he was at home with
his mother at the time of the offense.  His mother testified to seeing him
that evening, but acknowledged it was possible appellant left the house while
she was sleeping.  Alibi
evidence is just one factor for the jury=s consideration, and an evaluation of
such evidence also turns on credibility and demeanor.  Id.; Davis v. State, 831
S.W.2d 839, 842 (Tex. App.CDallas 1992, pet. ref=d).  Thus, the jury was free to
accept or reject appellant=s alibi evidence.  See Vasquez v. State, 67 S.W.3d 229,
236B39 (Tex. Crim. App. 2002); Johnson, 176 S.W.3d at 78.

Though
appellant suggests that his alibi evidence and Corea=s allegedly mistaken identification
weaken the State=s evidence, a jury=s decision is not manifestly unjust
simply because the jury resolved conflicting views of the evidence in favor of
the State.  See Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App.
1997); Johnson, 176 S.W.3d at 78.  Accordingly, in the face of any
conflicting evidence, such as when Corea reported seeing the ski mask, we
presume the jury resolved conflicts in favor of the State.  See Lancon v. State, 253 S.W.3d 699, 706B07 (Tex. Crim. App. 2008) (involving
no physical evidence and inconsistent testimony about a shooting and
description of the shooter=s clothing, but holding the evidence was factually sufficient
to support conviction).  The identification evidence presented,
particularly the investigator=s testimony that the offense report described a young, black
male with a sawed-off shotgun, which corroborated Corea=s identification of appellant, is not
so weak that the jury=s verdict is against the great weight and preponderance of
the evidence.  See Brown v. State, 212 S.W.3d 851, 864B65 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d).  Corea=s identification of the pistol-grip,
sawed-off shotgun and ski mask found in appellant=s car link appellant to the crime as
well.  See id.  Furthermore, when the evidence is viewed in a
neutral light, we cannot
say, with some objective basis in the record, that appellant=s conviction is Aclearly wrong@ or Amanifestly unjust@ because the great weight and
preponderance of the evidence contradicts the jury=s verdict.  See Vasquez, 67 S.W.3d at 236B39; Brown, 212 S.W.3d at 864B65. 

 

The evidence presented is legally and factually sufficient
to support appellant=s conviction for aggravated robbery.[2] 
See Vasquez, 67 S.W.3d at 238B39; Brown, 212 S.W.3d at 864B65.  Accordingly, we overrule appellant=s second and third
issues.

B.     
Was the complainant=s out-of-court identification of appellant based on an
impermissibly suggestive pretrial photo array so that the in-court
identification lacked indicia of reliability?

In his first issue, appellant asserts that Corea=s out-of-court
identification based on an impermissibly suggestive pretrial photo array
tainted Corea=s in-court identification and implicates appellant=s due process
rights under the United States and Texas Constitutions.[3]


 

An in-court identification is inadmissible if it has been tainted
by an impermissibly suggestive pretrial identification procedure.  Ibarra
v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).  We consider,
under the totality of circumstances, whether the pretrial photographic
identification procedure was so impermissibly suggestive as to give rise to a
very substantial likelihood of irreparable misidentification.  Luna v.
State, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008).  Because
admissibility of identification testimony hinges on reliability, to warrant
exclusion of Corea=s in-court identification, appellant must
prove by clear and convincing evidence that the in-court identification was
unreliable.  See id.; Delk v. State, 855 S.W.2d 700, 706
(Tex. Crim. App. 1993); Santos v. State, 116 S.W.3d 447, 451, 455 (Tex.
App.CHouston [14th
Dist.] 2003, pet. ref=d).  If the indicia of reliability
outweigh the influence of an impermissibly suggestive pretrial identification,
in-court identification testimony is admissible.  See Luna, 268
S.W.3d at 608; Delk, 855 S.W.2d at 706. 

 

A pretrial procedure may be suggestive, but that does not
necessarily mean it is impermissibly so.  Barley v. State,
906 S.W.2d 27, 34 (Tex. Crim. App. 1995).  Suggestiveness may be
implicated by the manner a pretrial identification procedure is conducted, as
in suggesting a suspect is included in the array, or by the content of the
photo array itself, for example, when the suspect is the only individual who
closely resembles the pre-procedure description.  See id. at 33. 
Testimony from neither Corea nor the officer indicates an unduly suggestive
procedure.[4] 
The photo array is comprised of six pictures of young, black men with similar
facial features, skin color, and hair styles.  All are dressed in street
clothes, and appellant is wearing a dark-colored, hooded sweatshirt pulled down
around his shoulders.  Corea testified the sweatshirt shown in the photo
is different from the one worn by the robber.  The fact that appellant is
wearing apparel similar to the grey, hooded sweatshirts worn by the robbers is
not necessarily impermissibly suggestive.  See Smith v. State, 930
S.W.2d 227, 229 (Tex. App.CBeaumont 1996, pet. ref=d) (holding
in-court identification of defendant was not tainted by pretrial photo array
when the defendant was the only person wearing a hooded sweatshirt similar to
the one worn in the robbery); see also Roberts v. State, No.
14-04-01048-CR, 2006 WL 561786, at *2 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d) (mem. op., not designated for publication)
(involving a suspect shown in the photo array wearing an orange shirt that
suggested he was in custody).

Even assuming arguendo the pretrial photo array was
suggestive, Corea=s in-court identification still would be
admissible because there is no substantial likelihood of irreparable
misidentification.  See Luna, 268 S.W.3d at 608.  In assessing
reliability under the totality of the circumstances, we weigh the following
five factors against the corrupting effect of any suggestive pretrial identification
procedure:  (1) the witness=s opportunity to
view the criminal act, (2) the witness=s degree of
attention, (3) the accuracy of the suspect=s description, (4)
the level of certainty at the time of confrontation, and (5) the time between
the crime and confrontation.  Luna, 268 S.W.3d at 605; Ibarra,
11 S.W.3d at 195.  

The record reflects that Corea was within arms-length of
the robber.  Corea explained, and the video and Corea=s wife confirmed,
the parking lot was well-lit that night.  Corea had the opportunity to
glimpse the robber=s face without a ski mask for several
seconds.  As the complainant who was threatened at close range, he had
reason to be attentive.  See Smith, 930 S.W.2d at 229.  Before
the pretrial identification, Corea was confident that he could identify the
robber.  The time between the crime and the confrontation was about one
month, and Corea quickly identified appellant as the robber when shown the
photo array.  He remained certain of the identification.  Moreover,
the general description Corea relayed to authorities matched appellant=s physical
appearance at over six feet tall and over two hundred pounds.  After
seeing the photo, Corea told authorities the robber was Awell-built,@ an accurate
detail not apparent from appellant=s head-shot
photo.  At trial, Corea testified that he noticed the hood in the photo,
but he recognized appellant=s face first.  Weighing this
reliability against any suggestiveness of the photo array leads us to conclude
that no substantial risk of irreparable misidentification was created so as to
deny appellant due process.  The trial court did not err in allowing this
testimony before the jury.  See Luna, 268 S.W.3d at 608; Smith,
930 S.W.2d at 229.  Accordingly, we overrule appellant=s first issue.

 

C.     
Did the trial court commit error in denying appellant=s requested jury instructions?

In two issues, appellant complains that the trial court
erred in refusing his request for certain jury instructions.  In analyzing
a jury-charge issue, we first determine if an error occurred, and, if so, we
conduct a harm analysis.  Ngo v. State, 175 S.W.3d 738, 743 (Tex.
Crim. App. 2005).  The degree of harm necessary for reversal turns on
whether appellant preserved error by objection.  Id.

In his fifth issue, appellant claims the trial court erred
in overruling his request for a jury instruction as to the exclusionary rule
under Article 38.23 of the Texas Code of Criminal Procedure because he alleges
there was conflicting evidence concerning the manner in which the photo array
identification was conducted.  Article 38.23 of the Texas Code of Criminal
Procedure provides in relevant part:

No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the
jury shall be instructed that if it believes , or has reasonable doubt, that
the evidence was obtained in violation of the provisions of the article, then
and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23(a)
(Vernon 2005).

 

By its own terms, Article 38.23 applies only to illegally
obtained evidence, but not identification.  See Andujo v. State,
755 S.W.2d 138, 143 (Tex. Crim. App. 1988); Allen v. State, 511 S.W.2d
53, 54 (Tex. Crim. App. 1974).  The Article 38.23 jury-instruction
requirement applies only when there is a fact issue regarding whether the
evidence was obtained in violation of state or federal laws.  See Reece
v. State, No. 14-98-00564-CR, 2000 WL 991326, at *5 (Tex. App.CHouston [14th
Dist.] Jul. 20, 2000, pet. ref=d) (not designated for publication). 
Appellant has not demonstrated a fact issue concerning the legality of Corea=s identification
of him.  See id.  Appellant was not entitled to an Article
38.23 instruction regarding Corea=s out-of-court
identification of him, and, thus, no error occurred.  See Andujo,
755 S.W.2d at 143; Allen, 511 S.W.2d at 54; Reece, 2000 WL
991326, at *5. Therefore, we overrule appellant=s fifth issue.

In his sixth issue appellant complains the trial court erred
in denying his request for two jury instructions pertaining to
identification.  Appellant=s requested instructions are provided
below:

Requested Jury Instruction Number One:  One of the most important issues
in this case is the identification of the defendant as the perpetrator of the
crime.  The State has the burden of identity, beyond a reasonable doubt.
It is not essential that the witness himself be free from doubt as to the
correctness of this statement.  However, you, the jury, must be satisfied
beyond a reasonable doubt of the accuracy of the identification of the
defendant before you may convict him.  If you are not convinced beyond a
reasonable doubt that the defendant was the person who committed the crime, you
must find the defendant not guilty.

Requested Jury Instruction Number
Three:  The burden of proof on the State extends to every element of the
crime charged, and this specifically includes the burden of proving beyond a
reasonable doubt the identity of the defendant as the perpetrator of the crime
with which he stands charged.  If after examining the testimony, you have
a reasonable doubt as to the accuracy of the identification, you must find the
defendant not guilty.

 

A jury charge based on eyewitness identification,
instructing the jury to acquit a defendant if the jury has reasonable doubt
that the defendant was mistakenly identified, amounts to an impermissible
comment on the weight of the evidence and should not be given.[5] 
See Roberson v. State, 852 S.W.2d 508, 511 (Tex. Crim. App. 1993); Waller
v. State, 581 S.W.2d 483, 484 (Tex. Crim. App. 1979) (indicating such
instructions single out identification evidence and improperly magnify facts
before the jury).  The trial court did not commit error in refusing to
give the proffered instructions.  See St. Luce v. State,
14-98-01316-CR, 2000 WL 1862843, at *1 (Tex. App.CHouston [14th
Dist.] Dec. 21, 2000, pet. ref=d).  Therefore, we overrule appellant=s sixth issue.

D.     
Did the trial court abuse its discretion in not granting appellant=s motion for new trial?

In his seventh issue, appellant claims the trial court
abused its discretion in denying his motion for new trial.  Appellant=s motion for new
trial was based on his complaint that the notice given on October 3, 2007, for
an October 8, 2007, trial was insufficient.  Such actions, appellant
alleges, denied him of an opportunity to present a witness essential to his
defense.  Furthermore, appellant claims that, as a result of the trial
court=s action, he was
denied effective assistance of counsel, compulsory process, and due process
rights under the United States and Texas Constitutions.

 

We review a trial court=s grant or denial
of a motion for new trial under an abuse-of-discretion standard.  See
Rodriguez v. State, 21 S.W.3d 562, 566 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  Originally, appellant=s case was set for
trial on July 30, 3007.  Appellant filed a motion for continuance on June
21, 2007, based on the unavailability of an expert witness.  The trial
court granted the request and reset trial for September 4, 2007.  A docket
sheet reveals that between the dates of September 4, 2007 and October 3, 2007,
appellant=s case was reset weekly Aby computer.@  On October
3, 2007, the case was set to commence with jury selection on October 8,
2007.  By affidavit filed with appellant=s motion for new
trial, the expert witness explained that the notice given was insufficient to
compel his presence.[6]

Appellant has failed to adequately brief this argument
under his seventh issue.  He cites no authority for his contentions beyond
his bald assertions.  To present an issue for appellate review Athe brief must contain
a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.@  Tex. R. App. P. 38.1(h).  Appellant has not presented
a single argument or citation in support of his contentions.  He has not
addressed any of the governing legal principles or applied them to the facts of
this case.  See King v. State, 17 S.W.3d 7, 23 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  Appellant=s brief contains
two sentences that say he was denied an opportunity to present a witness
essential to his defense, his right to effective assistance of counsel and
compulsory process, and due process rights.  Conclusory statements which
contain no citations to authority present nothing for appellate review.  Id.;
see also Vuong v. State, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992). 
Therefore, we do not address the merits of these contentions. We overrule
appellant=s seventh issue.

Having overruled each of appellant=s seven issues, we affirm the
judgment of the trial court.

 

/s/     
Kem Thompson Frost

Justice

 

Panel consists of Anderson and Frost and Senior Justice
Hudson.*

Do Not Publish C Tex. R. App. P.
47.2(b).














[1]  In his first issue, which we address below,
appellant argues that Corea=s in-court
identification of appellant was improperly admitted.  However, in a
sufficiency review, a reviewing court must consider all evidence (whether or
not properly or improperly admitted at trial) that the jury was permitted to
consider.  Moff v. State, 131 S.W.3d 485, 488, 489 (Tex. Crim. App.
2004).





[2]  Because we conclude the evidence is legally sufficient to
support appellant=s conviction for aggravated
robbery, we do not find the trial court erred in denying appellant=s motion for an instructed
verdict.  See Cravin v. State, No. 14-96-01060-CR, 1999 WL 351162,
at *3 (Tex. App.CHouston [14th Dist.] June 3, 1999,
pet. ref=d) (not designated for
publication).  Therefore, we overrule appellant=s fourth issue.





[3]  Appellant has not cited and we have not found any place in
the appellate record showing that he raised this issue under the Texas Constitution
in the trial court.  With few exceptions, not applicable here, even
constitutional complaints may be waived by the failure to raise a timely
objection in the trial court.  See Tex. R. App. P. 33.1(a); Saldano v. State, 70 S.W.3d 873, 886B89 (Tex. Crim. App. 2002).  Appellant=s
complaint under the Texas Constitution is, therefore, waived.  See Tex. R.
App. P. 33.1(a).





[4]  Appellant complains of conflicting testimony
from Corea and the officer regarding the number of photo arrays shown to
Corea.  However, such testimony, alone, does not establish an unduly
suggestive procedure.  See Barley, 906 S.W.2d at 33 (providing
that the manner of a pretrial identification may be suggestive if an officer
indicates a suspect is included in the array); see also Benitez v. State,
5 S.W.3d 915, 921B22 (Tex. App.CAmarillo
1999, pet. ref=d) (providing multiple arrays containing different
photos of an appellant is not deemed a suggestive procedure); but see Cantu
v. State, 738 S.W.2d 249, 252 (Tex. Crim. App. 1987) (using same
photo of an appellant in multiple arrays is suggestive).  The
record contains an exhibit comprised of a single photo array of six
photos.  Though Corea testified to seeing Aseveral@ arrays, he also testified that he picked out Anumber three,@
appellant=s photo, from an array of six photos.  Even
though appellant points out that Corea might have seen multiple photo arrays
and appellant=s photo might have been included in multiple arrays,
such an assertion is speculative.  See Luna, 268 S.W.3d at 608.





[5]  Appellant acknowledges that courts view instructions
concerning eyewitness testimony and alibi as offering an improper comment on
the weight of the evidence.  Appellant urges this court to
consider the inherent unreliability of eyewitness testimony and compares this
scenario to a jury instruction for  uncorroborated accomplice witness
testimony, which is based on the inherently unreliable nature of such
testimony.  We are bound by the precedent of this court and the Court of Criminal Appeals.  See Roberson v. State, 852 S.W.2d 508,
511 (Tex. Crim: App. 1993); St. Luce v. State, 14-98-01316-CR, 2000 WL
1862843, at *1 (Tex. App.CHouston [14th Dist.] Dec. 21, 2000,
pet. ref=d).





[6]  In the affidavit, the expert witness indicates
he was to provide expert testimony concerning eyewitness identification and
photo array suggestiveness.  The affidavit does not reflect the expert=s knowledge of the identification procedures used in
this case nor does the expert offer an opinion whether the photo array in this
case was impermissibly suggestive.  See Baldree v. State, 248
S.W.3d 224, 229B30 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d) (analyzing
whether expert witness testimony was relevant in determining whether trial
court abused its discretion in excluding the expert testimony).





*  Senior Justice J. Harvey
 Hudson sitting by assignment.