COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO. 2-08-384-CR

NO.
2-08-385-CR

 

 

JOHNATHAN DAVID STRAHAN                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM THE 271ST
DISTRICT COURT OF WISE COUNTY

 

                                              ------------

 

                                             OPINION

                                                    

                                              ------------

I.  Introduction








Appellant Johnathan David Strahan appeals his
convictions for seven counts of possession of child pornography (Cause No.
14,235) and four counts of aggravated sexual assault (Cause No. 14,236).  In five points, Strahan argues that the trial
court erroneously refused to excuse a prospective juror for cause, that the
trial court erroneously denied his motion to quash the indictment in Cause No.
14,236; that the evidence was legally insufficient in Cause No. 14,236; that
the State made improper jury argument at the guilt-innocence phase of the
trial; and that the trial court incorrectly cumulated his sentences.  We will affirm the judgment in Cause. No.
14,236, and we will modify the judgment in Cause No. 14,235 and affirm it as
modified.

II.  Factual Background[1]

A.H., who was born February 18, 1994, testified
that she had lived in a house with John and Gennevieve (her grandparents),[2]
her sister M., her mother, someone named Marley, a girl named Sarah, and
Strahan.  A.H. testified that Strahan was
her dad. 

A.H. testified that when she was about ten years
old, Strahan asked his mother Gennevieve if A.H. could stay in his room, and
she remembers Strahan taking pictures of her at night.  A.H. testified that she wore a nightgown to
bed and that she was awakened many times when Strahan would lift up her
nightgown and take pictures of her.  A.H.
saw pictures of herself on Strahan=s computer. 









A.H. said that Strahan touched her A[p]retty much everywhere@ and later specified that he touched her chest,
her bottom, and her front private area with his hand, his mouth, and his
penis.  A.H. said that Strahan put his
finger inside of her.  A.H. testified
that the touching happened a lot and went on for a while before she told
anyone. 

When A.H. made an outcry to a friend=s mother, A.H. said, A[M]y dad was raping me.@  Shortly
after A.H. made her outcry, she spoke with the sheriff=s office. 
After the report was made, the police went to Strahan=s 
residence to search it while CPS removed A.H.=s sister. 
The grandparents consented to the search of the residence, and the
police seized from Strahan=s room a computer, a knife, and porn magazines
and paperbacks.  When the police turned
on Strahan=s
computer, he immediately said, AI know what this is about.  I never touched [A.H.],@ and stated in reference to the materials on his
computer, AThis
is some weird stuff, but they=re all of age.@ 








At the conclusion of the evidence, the jury found
Strahan guilty on all seven counts of possession of child pornography (Cause
No. 14,235) and on all four counts of aggravated sexual assault (Cause No.
14,236).  The trial court followed the
jury=s recommendations on punishment, sentencing Strahan
to ten years=
imprisonment and assessing a $10,000 fine on each count of possession of child
pornography and sentencing Strahan to life imprisonment and assessing a $10,000
fine on each count of aggravated sexual assault.  The trial court ordered the sentences to run
consecutively.  This appeal followed.

III.  Denial of Challenge For
Cause

In his first point, Strahan argues that the trial
court erroneously denied his challenge for cause to veniremember Ms. Fincher.  Strahan argues that Ms. Fincher could not be
fair and was crying during her questioning. 

The following exchange took place during the
State=s voir dire:

[THE STATE]: 
And we want you to [make us do our job]. 
We want you to.  We want you to
hold us to our burden; that=s our
responsibility.

 

Is there
anyone else that has any concerns because of the charge?

 

THE JUROR: 
(Indicating.)

 

[THE STATE]: 
Yes, ma=am?

 

THE JUROR: 
I just -

 

[THE STATE]: 
Ms. Fincher?

 

THE JUROR: 
I=m uncomfortable, and I don=t know that I
could really give him a fair B

 

I just want
you to know how I feel.

 

[THE STATE]: 
Okay.  Are you comfortable talking
about that from where you=re sitting?  Would you rather do
it at a later time privately?  Can you explain
B

 

THE JUROR: 
Why B








[THE STATE]: 
-- how you=re feeling uncomfortable, or why?

 

THE JUROR: 
I guess because I have a 16-year-old, too.

 

[THE STATE]: 
Okay.

 

THE JUROR: 
I don=t know.  I just have a problem
with sexual abuse.

 

[THE STATE]: 
And you should.  I mean, it
shouldn=t happen.  It shouldn=t happen to kids.  And it should
be against the law.  I think we all agree
on that.  And if it ever happened to your
child, you would be devastated.  You
would be angry.  And no one would expect
you to be on the jury.  No [one] would
expect you to be fair and impartial, if it were your own child.

 

But the
question is:  Is because of what he=s charged with, are you going to walk in and go; he must be
guilty?  I don=t even want to hear any of it; just give me a verdict form, Judge.

 

THE JUROR: 
That=s why I wanted you to know how I felt, because I know he=s not --

 

I know I have
concerns.

 

[THE STATE]: 
And I -- I respect those feelings. 
I have those feelings.  I bet
everybody else on the panel has those feelings.

 

But I guess my
question to you is:  Because of your
feelings, are you going to, I guess, disregard your responsibility as a -- as a
juror?

 

THE JUROR: 
No.

 

[THE STATE]: 
Are you going to come in and give him the -- the presumption of
innocence and make us prove that guilt?

 

THE JUROR: 
I would try.  I really would.  Yes, ma=am.

 








[THE STATE]: 
Okay.  Knowing yourself better
than anybody else in this courtroom, would you -- do you think you could do
it?  Do you think you could hold us to
that burden?

 

THE JUROR: 
I would try.

 

[THE STATE]: 
Okay.  Anybody else have any
questions or concerns? 

 

At the conclusion of voir dire, Defense counsel
challenged Ms. Fincher, for cause, arguing that she Acouldn=t be fair.@  The trial
court stated that it had written down that Ms. Fincher felt Auncomfortable,@ that she said that she would try to hold the
State to its burden, and that she had not unequivocally stated one way or the
other that she could not be fair.  The
trial court denied the defense=s challenge for cause.  When defense counsel stated that the trial
court had erroneously overruled challenges to Ms. Fincher and two other jurors
and requested three additional strikes, the trial court denied defense counsel=s request for additional strikes. 








A trial court=s ruling on a challenge for cause will not be
overturned on appeal unless the ruling constitutes an abuse of discretion.  Ladd v. State, 3 S.W.3d 547, 559 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1070 (2000).  When we review a trial court=s decision to grant or to deny a challenge for
cause, we look at the entire record.  Feldman
v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).  We give great deference to the trial court=s decision because the trial judge is present to
observe the demeanor of the veniremember and to listen to her tone of
voice.  Id.  Particular deference is given when the potential
juror=s answers are vascillating, unclear, or
contradictory.  Id.; King v.
State, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000).








Here, the record reflects that Ms. Fincher did
not cry during voir dire questioning; another veniremember, Jody Carter,
did.  Ms. Fincher expressed concerns but
agreed that she would hold the State to its burden.  From Ms. Fincher=s responses, the trial court could have
reasonably concluded that she was expressing her intention to follow the
law.  See Stallings v. State, 47
S.W.3d 170, 174 (Tex. App.CHouston [1st Dist.] 2001, no pet.) (indicating
trial court could have concluded veniremember was expressing intention to
follow the law by not forming an opinion until he had heard the case).  The trial court saw and heard Ms. Fincher as
she responded to questioning, and in light of Ms. Fincher=s answers we must defer to the trial court=s evaluation and belief that she could follow the
law.  Feldman, 71 S.W.3d at
744.  Based on the record as a whole, we
hold that the trial court did not abuse its discretion by denying Strahan=s challenge for cause to Ms. Fincher.  See Stallings, 47 S.W.3d at 174; see
also Newbury v. State, 135 S.W.3d 22, 35 (Tex. Crim. App.) (holding that
trial court did not abuse its discretion by denying appellant=s challenge for cause to veniremember who gave
conflicting answers because trial court was in best position to evaluate
veniremember=s
demeanor and responses), cert. denied, 542 U.S. 990 (2004).  We therefore overrule Strahan=s first point.

IV.  Denial of Motion to Quash

In his second point, Strahan argues that the
trial court erred in Cause No. 14,236 by denying his motion to quash the
indictment.  Strahan complains that
because the indictment did not allege a specific date but instead used Aon or about@ language, the offenses presented to and indicted
by the grand jury could have been different than those presented at trial. 

The State may allege in an indictment that an
offense occurred Aon
or about@ a date certain. 
Sledge v. State, 953 S.W.2d 253, 255B56 (Tex. Crim. App. 1997) (citing Mitchell v.
State, 168 Tex. Crim. 606, 611, 330 S.W.2d 459, 462 (1959)).  It is well settled that the Aon or about@ language of an indictment allows the State to
prove a date other than the one alleged in the indictment as long as the date proved
is anterior to the presentment of the indictment and within the statutory
limitations period.  See Tex. Code
Crim. Proc. Ann. art. 21.02(6) (Vernon 2009); Wright v. State, 28 S.W.3d
526, 532 (Tex. Crim. App. 2000), cert. denied, 531 U.S. 1128 (2001);
Scoggan v. State, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990); Thomas
v. State, 753 S.W.2d 688, 692 (Tex. Crim. App. 1988).








A[A]n indictment must >allege on its face the facts necessary (1) to
show that the offense was committed, (2) to bar a subsequent prosecution for
the same offense, and (3) to give the defendant notice of precisely what he is
charged with.=@  State
v. Edmond, 933 S.W.2d 120, 131 (Tex. Crim. App. 1996) (Baird, J.,
concurring and dissenting) (quoting Terry v. State, 471 S.W.2d 848, 852
(Tex. Crim. App. 1971)).  An indictment
or information normally provides sufficient notice if it tracks the language of
the statute.  Olurebi v. State,
870 S.W.2d 58, 62 (Tex. Crim. App. 1994). 
We review a trial court=s denial of a motion to quash an indictment for
an abuse of discretion.  Weatherby v.
State, 61 S.W.3d 733, 736 (Tex. App.CFort Worth 2001, pet. ref=d).








Here, the four counts of aggravated sexual
assault that were alleged in the indictment, which was filed on May 24, 2007,
tracked the language of the aggravated sexual assault statute.  See Tex. Penal Code Ann. ' 22.021(a)(1)(B) (Vernon Supp. 2009).  The indictment alleged that Strahan had
committed aggravated sexual assault of A.H. on or about November 30, 2005; on
or about January 30, 2006; on or about July 30, 2006; and on or about November
30, 2006.  During the trial, A.H.
testified that Ait
happened a lot,@
that it was pretty random, and that it went on for about two years before
she told Ms. Heeter on December 1, 2006. 
At the conclusion of the evidence, Strahan put the State to an election
outside the presence of the jury.  The
State elected Athe
first time it happened, the second time it happened, the third time it
happened, and then the last time it happened@ to coincide with the four times alleged in the
indictment.  Each of these times occurred
before A.H. made her outcry on December 1, 2006, and therefore occurred before
the indictment date of May 24, 2007.

The evidence thus demonstrates that the acts
alleged in the indictment occurred before the presentation of the indictment to
the grand jury.  See Tex. Code
Crim. Proc. Ann. art. 21.02(6); Wright, 28 S.W.3d at 532.  And there is no statute of limitations period
for aggravated sexual assault under penal code section 22.021(a)(1)(B).  See id. art. 12.01(1)(B) (Vernon Supp.
2009).  Moreover, grand jury proceedings
are required to be kept secret, see id. art. 20.02(a) (Vernon
Supp. 2009), so no evidence exists here that the offenses presented to the
grand jury differed from the offenses proved at trial.  We hold that the trial court did not abuse
its discretion by denying Strahan=s motion to quash the indictment in Cause No.
14,236.  See Weatherby, 61 S.W.3d
at 736 (holding that trial court did not abuse its discretion by failing to
quash indictment when there was no evidence to show that offenses presented to
grand jury differed from offenses proved at trial).  We overrule Strahan=s second point.








V.  Sufficiency of Evidence to
Prove Victim Was Not Strahan=s Wife

In his third point, Strahan argues that the
evidence is legally insufficient to support his conviction in Cause No. 14,236
because the State failed to prove that A.H. was not his spouse. 

To prove a case of aggravated sexual assault of a
child, the State must show that the defendant (1) intentionally or knowingly
(2) caused the penetration (3) of the sexual organ (4) of a child.  Tex. Penal Code Ann. ' 22.021(a)(1)(B).  A child is defined as a person younger than
seventeen years of age who is not the spouse of the actor.  Id. ' 22.011(c)(1) (Vernon Supp. 2009).  However, direct evidence that the victim was
not the spouse of the defendant is not required; it may be proved by
circumstantial evidence.  Martin v.
State, 819 S.W.2d 552, 556 (Tex. App.CSan Antonio 1991, no pet.) (evidence that victim
was six to nine years of age when offenses occurred was sufficient evidence
that she was not defendant=s spouse); Meyers v. State, 737 S.W.2d 6,
8B9 (Tex. App.CCorpus Christi 1987, no pet.) (evidence
sufficient to support inference that child victim was not defendant=s spouse).








The standard of review is the same for direct and
circumstantial evidence cases; circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.  Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim.
App. 2007).  The appellate court must
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton, 235 S.W.3d at 778.








In the instant case, we have carefully reviewed
the record, and although we find no direct evidence establishing that A.H. was
not Strahan=s
spouse, there is ample circumstantial evidence establishing this fact.  The evidence established that A.H. was
approximately ten years old when the sexual assaults began taking place.  A.H. initially testified that Strahan was her
father but later testified that it was confusing and that she did not know who
her father was. However, when A.H. made her outcry to a friend=s mother, she said that her dad was raping her
and then identified Strahan at trial as the perpetrator.  The nurse who examined A.H. also testified
that A.H. had told her that her dad put his privates and his finger in her
privates and that her dad was Strahan. Moreover, when A.H.=s mother testified, she said that she had a
sexual relationship with Strahan while her husband Joe was in jail and that
occurred approximately two weeks before she found out that she was pregnant
with A.H.  A.H.=s mother testified that A.H. looks like Strahan
and that she believes Strahan is A.H.=s father, even though there has been no DNA
testing and Joe=s
name is on the birth certificate.  The
record also reveals that while the State was questioning A.H.=s mother about something that Strahan had said,
defense counsel objected based on the husband-wife privilege, thereby
indicating a belief that A.H.=s mother (not A.H.) was married to Strahan while
Strahan was sexually assaulting A.H. 

Although the State has the burden to prove every
element of the offense of aggravated sexual assault, after reviewing the
evidence in the light most favorable to, or consistent with, the verdict of
guilt, we cannot say that the evidence supports any inference other than that
A.H. was not Strahan=s
spouse.  See Meyers, 737 S.W.2d at
8B9 (looking at circumstantial evidence and holding
that evidence supported no inference other than that the victim was not the
spouse of the appellant); see also Salinas v. State, No. 13-99-00226-CR,
2000 WL 34252060, at *2 (Tex. App.CCorpus Christi Aug. 31, 2000, no pet.) (not
designated for publication) (holding that it was legally impossible for victim
to be appellant=s
spouse because victim was five years old when sexual assaults occurred and
appellant testified that he was victim=s father).

We hold that the evidence is legally sufficient
for a rational factfinder to conclude that A.H. was not Strahan=s spouse. 
We overrule Strahan=s third point.








VI.  Proper Jury Argument

In his fourth point, Strahan argues that the
State made an improper jury argument during the guilt-innocence phase of
trial.  Specifically, Strahan argues that
the prosecutor=s
statement that he believed he had proven his case constituted improper
argument. 

During closing arguments, defense counsel reread
a portion of the jury charge:  AThe Prosecution has the burden of proving the
Defendant guilty, and it must do so by proving each and every element charged
beyond a reasonable doubt.  And if it
fails to do so, you must acquit the Defendant.@  Immediately
thereafter, defense counsel made the following statements:

Do you remember when you first sat down in this chair, and Judge
Fostel said, you=re going to hear evidence from the witness stand, you=re going to hear evidence in the form [of] maybe a photograph or an
exhibit?      

 

That=s what you consider when you decide if the State has proved each and
every element of the offense.  And
they have catastrophically failed in both of these cases. 

 

. . . .

 

And they say
that matter is proven, but they alleged something that they can=t prove.

 

I=d be mad as I could be at my District Attorney=s office, if I was you.  I=d be furious.

 

I don=t live her[e].  I don=t vote here.  I may not ever get
another deal here.  I=d be out of here.  I=d be furious. 








. . . .

 

The question
is:  Are those the photographs that were
on that computer in a place where he knew where they were and he could identify
where they were?

 

And the way
they have brought this to you does not prove that; does not prove that.

 

If they=ve got 900 photographs, maybe they can try one of those and get it
right. 

 

. . . .

 

They may try one of these other sexual assaults
and get it right; if it=s
-- if it=s been hundred of times; there=s nothing wrong with any of that.

They failed on
what they brought you here.  They
failed.  They failed miserably. [Emphasis
added.]

 

During the State=s rebuttal, the prosecutor responded as follows:

You all said,
when Ms. McCormick was talking to you on voir dire, that if we proved our case,
you could find him guilty.

 

Sometimes for
a lot of people it takes a certain amount of bravery to find somebody guilty
and convict them of their crimes.  I
understand that.

 

Sometimes it=s easy to just say, oh, we could just let him go and forget the whole
thing; I mean, that=s fine, you know.  But I B

 

And I
understand that, too.

 

But I=m -- I=m going to hold you to your word, because I believe we have proven our
case, beyond any doubt, actually, that there can be no doubt -- 

 








Strahan=s objection followed, asserting that the
prosecutor=s
feelings are not the proper subject of argument. 

To be permissible, the State=s jury argument must fall within one of the
following four general areas:  (1)
summation of the evidence; (2) reasonable deduction from the evidence; (3)
answer to argument of opposing counsel; or (4) plea for law enforcement.  Felder v. State, 848 S.W.2d 85, 94B95 (Tex. Crim. App. 1992), cert. denied,
510 U.S. 829 (1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim.
App. 1973).  The prosecution is afforded
a wide degree of latitude in drawing reasonable deductions from the evidence so
long as the inferences drawn are reasonable, fair, legitimate, and offered in
good faith.  Gaddis v. State, 753
S.W.2d 396, 398 (Tex. Crim. App. 1988). 
A prosecutor is permitted to argue his opinion about a case to the jury
so long as it is based on the evidence in the record and does not constitute
unsworn testimony.  Wolfe v. State,
917 S.W.2d 270, 281 (Tex. Crim. App. 1996); Barnard v. State, 730 S.W.2d
703, 718 (Tex. Crim. App. 1987), cert. denied, 485 U.S. 929 (1988).  And, likewise, a prosecutor may answer jury
arguments by the defense as long as the response does not exceed the scope of
the invitation.  Andujo v. State,
755 S.W.2d 138, 144 (Tex. Crim. App. 1988).













Although Strahan characterizes the prosecutor=s argument as impermissibly interjecting her Afeelings,@ her remarks actually argue that the State shouldered
its burden of proof.  Contra Prudholm
v. State, 274 S.W.3d 236, 241 (Tex. App.CHouston [1st Dist.] 2008, pet. granted) (holding
prosecutor=s
argument that AI
didn=t really want to come to work because I didn=t want to have to deal with this filth.  I=m tired of it. 
It=s
disgusting,@
constituted impermissible expression of personal feelings).  To the extent the prosecutor=s argument may be construed as interjecting her
belief that the State has met its burden of proof, the argument was made in
response to the defense argument that the defense believed the State had
catastrophically failed to prove the elements of the offenses in both cases.  See Mijores v. State, 11 S.W.3d 253,
258 (Tex. App.CHouston
[14th Dist.] 1999, no pet.) (holding prosecutor=s argument that the victim was credible was
permissible argument when made in response to defense argument that in his
opinion victim was not being entirely honest about the event); see also Andujo,
755 S.W.2d at 144; Yates v. State, 917 S.W.2d 915, 919 (Tex. App.CCorpus Christi 1996, pet. ref=d) (holding that prosecutor=s statementCin which he employed a rhetorical device to argue
that the evidence of appellant=s guilt was overwhelmingCdid not indicate that his arguments were based on
anything other than the evidence admitted at trial); Ivison v. State,
No. 13-01-00519-CR, 2002 WL 34230971, at *9 (Tex. App.CCorpus Christi Aug. 30, 2002, no pet.) (not
designated for publication) (holding that prosecutor=s remarks were made in response to defendant=s arguments and did not exceed the bounds of the
invitation).  We overrule Strahan=s fourth point.

VII.  Cumulation of Sentences

In his fifth point, Strahan argues that the trial
court improperly cumulated his sentences because the State made no motion for
cumulation and because the orders do not meet the specificity requirements
imposed by case law.  Strahan also argues
that the trial court improperly attempted to correct the alleged defects by
signing a judgment nunc pro tunc. 

A.  Standard of Review 

A trial court=s decision to cumulate sentences is reviewed for
an abuse of discretion.  Hurley v.
State, 130 S.W.3d 501, 503 (Tex. App.CDallas 2004, no pet.).  An improper cumulation order is a void
sentence.  Id.

B.  No Motion Required

Article 42.08(a) of the code of criminal
procedure provides, in relevant part, as follows:








When the same defendant has been convicted in two
or more cases, judgment and sentence shall be pronounced in each case in the
same manner as if there had been but one conviction.  Except as provided by Sections (b) and (c) of
this article, in the discretion of the court, the judgment in the second
and subsequent convictions may either be that the sentence imposed or suspended
shall begin when the judgment and the sentence imposed or suspended in the
preceding conviction has ceased to operate, or that the sentence imposed or
suspended shall run concurrently with the other case or cases . . . .

 

Tex.
Code Crim. Proc. Ann. art. 42.08(a) (Vernon Supp. 2009) (emphasis added).

As set forth above, article 42.08 vests a trial
court with discretion to cumulate a sentence without the necessity for a motion
by the State.  Consequently, Strahan is
presumed to know that the cumulation of his sentences was possible.  That being so, the lack of a pretrial motion
by the State to cumulate the sentences could not have rendered the cumulation
order void.  See Levine v. State,
Nos. 07-00-00154-CR, 07-00-00155-CR, 2001 WL 43052, at *3 (Tex. App.CAmarillo Jan. 16, 2001, no pet.) (not designated
for publication) (holding that article 42.08 authorizes a trial court to
cumulate a sentence without the necessity for a motion by the State); see
also Castrellon v. State, No. 02-05-00286-CR, 2006 WL 2830176, at *1 (Tex.
App.CFort Worth Oct. 5, 2006, no pet.) (mem. op., not
designated for publication) (holding that appellant was not entitled to notice
of stacking because statutes provided appellant with notice).  We hold that the trial court did not abuse
its discretion by entering a cumulation order without a motion from the
State.  We overrule this portion of
Strahan=s fifth point.

 








C.  Specificity of Cumulation Order

A cumulation order must be specific enough that
prison authorities know how long to detain the prisoner.  Stokes v. State, 688 S.W.2d 539, 540
(Tex. Crim. App. 1985).  The Texas Court
of Criminal Appeals has identified five elements for a valid cumulation
order:  (1) the cause number of the prior
conviction; (2) the correct name of the trial court where the conviction was
taken; (3) the date of the prior conviction; (4) the term of years of the prior
conviction; and (5) the nature of the prior conviction.  Id.; Ward v. State, 523 S.W.2d
681, 682 (Tex. Crim. App. 1975).  However,
not all elements are necessary for a cumulation order to be valid, so long as
the earlier sentence with which the latest sentence will be cumulated can be
properly identified.  Stokes, 688
S.W.2d at 540.

The cumulation order should be sufficiently clear
so that it may be understood without having to refer to other evidence.  Id. 
A trial court may correct a cumulation order nunc pro tunc to add
descriptive details of the prior offenses inadvertently omitted from the trial
court=s first cumulation order.  See Williams v. State, 675 S.W.2d 754,
765 n.6 (Tex. Crim. App. 1984). When a cumulation order is not sufficiently
clear, an appellate court may reform the order and affirm it as modified if the
record reveals all information required to reform it.  Banks v. State, 708 S.W.2d 460, 462
(Tex. Crim. App. 1986).








1.  The Cumulation Orders

Here, in open court, the trial court pronounced
the sentence in the child pornography case (Cause No. 14,235) at ten years= confinement and a $10,000 fine for each of the
seven counts. The trial court pronounced the sentence in the aggravated sexual
assault case (Cause No. 14,236) at confinement for life and a $10,000 fine for
each of the four counts.  The trial court
concluded, 

As to the
sentences in Cause No. 14,235, it is the order of the Court that these the
sentences -- the sentences in that case will run consecutively.

 

In Cause No. 14,236, it is the order of the Court
that the life sentences in that case, the Defendant=s sentences, too, will run consecutively. 

Strahan
objected to the consecutive sentences, and the trial court overruled his
objection. 

The judgment for Cause No. 14,235 reflects the
ten-year sentences and the $10,000 fines that were assessed in open court in
each of the seven counts and states, AThis sentence for each count shall run consecutively,
and consecutively with the sentence in 14,236.@ 

The judgment for Cause No. 14,236 reflects the
life sentences and the $10,000 fines that were assessed in open court in each
of the four counts and states, AThis sentence for each count shall run
consecutively, and consecutively with the sentence in 14,235.@ 








Less than a month later, the trial court signed
judgments nunc pro tunc in each of the cases. 
The judgment nunc pro tunc in Cause No. 14,236 states, AThis sentence for each count shall run consecutively
as follows:  Count II shall run
consecutively to Count I; Count III shall run consecutively to Count II; Count
IV shall run consecutively to Count III.@ 

The judgment nunc pro tunc in Cause No. 14,235
states, 

This sentence
for each count shall run consecutively as follows:

 

Count I shall
run consecutively to Count IV of Cause #14,236;

 

Count II shall
run consecutively to Count I; 

 

Count III
shall run consecutively to Count II; 

 

Count IV shall
run consecutively to Count III; 

 

Count V shall
run consecutively to Count IV; 

 

Count VI shall
run consecutively to Count V; 

 

Count VII shall run consecutively to Count VI. 

2.  Judgments Nunc Pro Tunc Added Specificity








The situation presented here is unique: the oral
pronouncement of sentence mentioned the trial court=s intent to stack the sentences and ordered them
to run consecutively; the judgments in each case also captured this.  However, as set forth above, neither the oral
pronouncement nor the judgments in each case stated which case=s sentence would be served first.  The judgments nunc pro tunc in each case
corrected that omission, showing that the sentence for Count I of Cause No.
14,236 would be served first.  Because a
trial court may correct a cumulation order nunc pro tunc to add descriptive
details, we conclude that the judgments nunc pro tunc were the proper vehicle
for the trial court to accomplish what it set out to do in its oral
pronouncement.  See Williams, 675
S.W.2d at 765 n.6.








However, both the original judgments and the
judgments nunc pro tunc failed to list the name of the court, the date of the
conviction, the years of punishment assessed, and the nature of the conviction;
the judgments nunc pro tunc list only the cause numbers.  In a similar case in which only the cause
number and county were mentioned in a cumulation order out of Dallas County,
the appellate court took judicial notice of certain facts concerning how the
Dallas County District Clerk=s office assigns case numbers.  See Gaston v. State, 63 S.W.3d 893,
900 (Tex. App.CDallas
2001, no pet.).  In this case, because
one appeal was taken from the judgments in both Cause No. 14,235 and Cause No.
14,236, we have both judgments before us simultaneously.  We can see that the cause numbers are
sequential, that the cases were tried at the same time, and that both cases
arose out of Wise County; therefore, we will take judicial notice of how the
Wise County Clerk=s
Office assigns case numbers.  See id.  We do not condone the lack of specificity of
the cumulation orders here.  But we
conclude that, given the assignment of unique case numbers in Wise County, the
TDCJ will be able to correctly identify the aggravated sexual assault
convictions in Wise County for cumulation with the pornography convictions.

However, out of an abundance of caution, we
sustain the remainder of Strahan=s fifth point complaining of the lack of the name
of the count, date of conviction, years of punishment assessed, and nature of
conviction in the cumulation order[3]
and modify the judgment in Cause No. 14,235 to state, 

This sentence
for each count shall run consecutively as follows:

 

Count I shall
run consecutively to the life sentence imposed on October 9, 2008, in Count IV
of Cause #14,236 from the 271st District Court of Wise County involving
aggravated sexual assault of a child;

 

Count II shall
run consecutively to Count I; 

 

Count III
shall run consecutively to Count II; 

 








Count IV in
case #14,235 shall run consecutively to Count III; 

 

Count V shall
run consecutively to Count IV; 

 

Count VI shall
run consecutively to Count V; 

 

Count VII
shall run consecutively to Count VI. 

 

See
Sanders v. State, No.
02-08-00058-CR, 2008 WL 4445644, at *9B11 (Tex. App.CFort Worth Oct. 2, 2008, no pet.) (mem. op., not
designated for publication) (modifying cumulation order that included only a
cause number out of U.S. District Court); see also Revels v. State, No.
05-07-01555-CR, 2008 WL 5177374, at *9B10 (Tex. App.CDallas Dec. 11, 2008, no pet.) (modifying
cumulation order that provided only a cause number because the intent of the
trial court as to sentencing was ascertainable from the record).

VIII.  Conclusion

Having overruled Strahan=s first four points and a portion of his fifth
point, we affirm the trial court=s judgment in Cause No. 14,236.  Having sustained a portion of Strahan=s fifth point and modified the cumulation order
in Cause No. 14,235, we affirm as modified the judgment in Cause No.
14,235.  See Tex. R. App. P. 43.2(b).

SUE WALKER

JUSTICE

 

PANEL: LIVINGSTON, WALKER, and MEIER, JJ.

 

PUBLISH

 

DELIVERED:
January 7, 2010            











[1]Because Strahan does not challenge the factual sufficiency of the
evidence to support his convictions, we set forth only a brief factual
background here.  Additional background
facts are provided as necessary throughout our opinion to fully address the particular
points raised by Strahan.





[2]The record revealed that John was the father of A.H.=s mother and that Gennevieve was the mother of Strahan and his brother
Joe. 





[3]To the extent that Strahan complains in his fifth point that the
cumulation orders are void because the offenses arose out of the same criminal
episode, we overrule that portion of his fifth point.  See Tex. Penal Code Ann. ' 3.03(b)(2)(A) (Vernon Supp. 2009) (specifically allowing
trial court to run such sentences concurrently or consecutively when an
aggravated sexual assault is involved).